CLEVELAND ELECTRIC RAILWAY COMPANY *v.* CLEVELAND AND THE FOREST CITY RAILWAY COMPANY.

CITY OF CLEVELAND *v.* CLEVELAND ELECTRIC RAILWAY COMPANY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

Nos. 197, 321.   Argued November 12, 13, 1906.—Decided January 7, 1907.

Grants of franchises are usually prepared by those interested in them and submitted to the legislatures with a view to obtain the most liberal grant obtainable, and for this and other reasons such grants should be in plain language, certain, definite in nature, and contain no ambiguity in their terms, and will be strictly construed against the grantee. *Blair* v. *Chicago*, 200 U. S. 400, 471.

The Ohio legislature has granted the city of Cleveland comprehensive power to contract with street railroad companies with regard to the use of its streets and length of time, not exceeding twenty-five years, for which such franchise may be granted. *Cleveland* v. *City Railway Co.*, 194 U. S. 517; *Cleveland* v. *Electric Railway Co.*, 201 U. S. 529.

The action of the city council of Cleveland, and the acceptance by the Cleveland Electric Railway Company of the various ordinances adopted by the council did not amount to a contract between the city and the company extending the time of the franchise involved in this action; and a later ordinance affecting that franchise after its expiration as originally granted is not void under the impairment clause of the Federal Constitution.

In the absence of any provision to that effect in the original franchise, the city granting a franchise to a street railway company, cannot on the expiration of the franchise take possession of the rails, poles and operating

appliances; they are property belonging to the original owner, and an ordinance granting that property to another company on payment to the owner of a sum to be adjudicated as its value is void as depriving the owner of its property without due process of law.

This bill was filed in the United States Circuit Court for the Northern District of Ohio on the twenty-first of March, 1905, against the City of Cleveland and The Forest City Railway Company, for the purpose of obtaining an injunction to restrain the city from carrying out a certain ordinance relating to the Garden street branch of complainant's railroad, passed by the city council January 11, 1904, on the ground that it was null and void, because it impaired the obligations of various contracts which the complainant alleged had been entered into between the complainant and the city, providing for the use until either July 13, 1913, or July 1, 1914, of certain streets by the railroad owned by the complainant, and known as the Garden street or Central avenue branch, and hereafter called the Garden street branch. The ordinance granted to The Forest City Railway Company (a stranger to the original grants) the renewal right to maintain and operate the existing street railroads through the streets named therein, which were the same streets theretofore granted to the Garden street railroad. The right was granted upon condition that the grantee should pay to the owners of the poles and other property being in the streets an amount to be agreed upon therefor, or such sum as should be finally adjudicated upon by a court. A temporary restraining order was granted. The defendants made separate answers, denying the existence of any contract between the complainant and the city upon the subject of the Garden street branch subsequent to March 22, 1905, and the Forest City Railway Company claimed under the ordinance of January, 1904, the right to take possession of such Garden street branch after March, 1905, and to use the tracks of the complainant's railroad. The case was heard upon the pleadings and various ordinances and resolutions of the council of the city.

After hearing, a decree was made by the Circuit Court (137 Fed. Rep. 111), which decreed that the right claimed by the complainant to operate its Garden street branch railroad in the streets named in the bill expired on the twenty-second day of March, 1905. It was also decreed that the ordinance of January 11, 1904, was inoperative, so far as it assumed to confer upon the defendant, The Forest City Railway Company, any legal right to take the tracks, poles, wires and appliances erected and maintained by the complainant in the streets, because such ordinance authorized the taking of the property of complainant without due process of law. The railroad company, therefore, was enjoined from interfering with the complainant in the peaceable possession of the property mentioned, and the city was enjoined from attempting in any manner, by virtue of the ordinance, to put the defendant, The Forest City Railway Company, into possession of the same. From the decree the complainant, and both of the defendants, appealed directly to this court, as involving questions arising under the Constitution of the United States. The complainant's appeal is No. 197, and is from that portion of the decree which adjudges that the right of the complainant to maintain and operate its Garden street branch railroad expired on the twenty-second of March, 1905. The cross appeal of the defendants is from that portion of the decree which enjoins The Forest City Railway Company from taking possession of the property described, and which also enjoins the city from in any manner attempting to put that company into possession thereof. It thus appears that the whole controversy turns upon the question whether the right of the Garden street railroad terminated March 22, 1905, or lasts until July 1, 1914, or possibly only until July 13, 1913.

The record shows that there are, among others, two lines of railroad belonging to the complainant, one of which is known as the Euclid avenue, sometimes called the "main" line, and the other the Garden street branch. Both lines run from east to west through the city in different, though generally parallel, streets up to the point of their intersection at Erie street and

Euclid avenue (or Prospect street), from which point west, for a short. distance, to the public square and Water street, the Garden street branch is authorized to use the Euclid avenue tracks.

The following (among many other) ordinances and resolutions of the council of the city were put in evidence on the trial, together with the various resolutions of complainant, in which it accepted such ordinances and resolutions. These constitute the case between the parties, and there is no contradictory evidence. Complainant contends that the Garden street grant must be measured in time by that provided for the termination of the Euclid avenue grant.

The ordinances and resolutions relating to the Euclid avenue line will be first stated. The first is a resolution, which granted to the East Cleveland Railroad Company, a corporation incorporated February 28, 1859, for that purpose, the right to construct and operate a railroad from a point on Prospect street at its intersection with Erie street, to the eastern terminus of Prospect street, which grant was for the term of twenty years from September 20, 1859. The company having obtained the necessary consents of the property owners along the line, duly located, constructed and operated the road under that resolution and within a short time after it was authorized so to do.

This was the commencement of what is known as the Euclid avenue, or sometimes (after 1868) the main line of one of the roads owned now by the complainant.

By ordinance, April 15, 1862, the company was authorized to extend its line from the intersection of Erie and Euclid streets west to the public square.

September 15, 1879, an ordinance was passed, which granted a renewal of the franchise to the East Cleveland Railroad Company to maintain and operate its whole Euclid avenue street railroad as far as Willson avenue, on the east, for a period of twenty-five years from September 20, 1879 (September 20, 1904). This ordinance makes no reference to the Garden street line, which had then been built and was in operation, and does not mention any of the streets through which that line passed,

although the Garden street line had the right, under the ordinance of 1868, hereinafter mentioned, to use the tracks of the Euclid avenue line from the point of junction therewith westerly to its terminus.

On the fourth of April, 1883, another ordinance was passed, granting to the East Cleveland Railroad Company the right to extend, lay and operate its double track on Euclid avenue from the west line of Willson avenue easterly to the east line of Fairmount street, the right granted to terminate on the twentieth of September, 1904, "with the said renewal of that part of said company's line lying west of Willson avenue." Ordinance of September 15, 1879, above referred to.

By ordinance of March 15, 1886, another grant was made to the Euclid avenue line east of Fairmount street, which grant was to cease and terminate upon the twentieth of September, 1904, "as provided for said company's tracks in Euclid avenue, west of Fairmount street."

In order to change from animal power to electricity an ordinance was passed July 13, 1888, granting to the East Cleveland Street Railway Company the right to construct and operate an electric street railway on Euclid avenue from Willson avenue easterly to the city limits, and on Cedar avenue from a point near the Cleveland and Pittsburg Railway Company's right of way in that avenue, easterly to a point about 1,500 feet east of Fairmount street. The permission was given on the condition that the grant was to be exercised within six months from the passage of the ordinance. The grant was also upon condition that if the company, from any cause, should fail to extend the electric system over its entire main and Cedar avenue lines within eighteen months from the date of the passage of the ordinance, then the ordinance should be void. Nothing in the ordinance was to be construed as authorizing any increase in the fare for transportation over any portion of the company's line. The sixth section of the ordinance stated that the privilege of constructing the electric system, as provided in the ordinance, was granted "in consideration of the improved facilities

hereby contemplated and the large expenditures necessary to secure the same, and shall be in force for the period of twenty-five years from and after the date of the passage of this ordinance, upon its main and Cedar avenue lines." The right to change to electric power, as given by the foregoing ordinance, was confined, it will be observed, to that portion of the Euclid avenue line east of Willson avenue, and on Cedar avenue to that part lying between the Cleveland and Pittsburg Railway Company's right of way and a point 1,500 feet east of Fairmount street. Nothing west of Willson avenue is included in that grant.

On May 13, 1889, a resolution was adopted, which authorized and required the railroad company, "as soon as practicable, to extend the use of such motive power over its main and Cedar avenue lines to the westerly termini thereof." This included those lines west of Willson avenue, and under the ordinance and resolution the Euclid avenue line was changed to an electric street railroad within the times mentioned in the ordinance and resolution.

There was no extension of time granted by the resolution of 1889 for the termination of the grant on any portion of the Euclid avenue line.

On July 17, 1893, the right was given to the company to extend its road at the intersection of Prospect and Erie streets to the intersection of Prospect and Ontario streets, and also at the intersection of Superior and Seneca streets, thence along Seneca, Lake and Ontario streets, and the council imposed upon it the duty, if required by the council, of operating its cars over the entire length of any of the lines. Other duties were imposed upon it. Complainant contends that some part of this ordinance refers to a portion of the Garden street extension, and that it requires the operation of all the Garden street cars over these tracks, and the grant is to terminate at the time mentioned in the 1888 ordinance, July 13, 1913.

The above list includes the material ordinances and resolutions pertaining particularly to Euclid avenue.

After the Euclid avenue line had been built the council, on the fourteenth of January, 1868, passed a resolution granting its consent to the East Cleveland Street Railroad Company to lay down its tracks from the intersection of Prospect and Brownell streets, "to connect with the main line of its railroad," running thence through Garden and other streets to and across Willson avenue, to the eastern boundary of the city, during the period of twenty years. Willson avenue was then the eastern boundary of the city. The road could continue to use and occupy the streets, avenues and public grounds, over which its main line was then constructed and operated westerly from the junction (at Brownell and Prospect streets) of said road with the main line to its westerly terminus, for the same length of time.

This Garden street line was thereafter built, and it is asserted that it was the inception of a new and separate street railroad. It has been extended at various times since, and forms, with its various extensions, what is called the Garden street branch, and is the railroad in question.

On the thirtieth of March, 1868, the railroad company was permitted by ordinance of the village of East Cleveland to construct a branch railroad on Garden street, which would form an extension, in fact, of the Garden street line easterly through the village to the line of Wade street. The grant was for twenty years from the time of the completion of the work, which was to be completed within five years from the date of the passage of the resolution granting the right, March 30, 1868.

On the twenty-fifth of March, 1873, the council passed a resolution, in the preamble of which it was stated that the East Cleveland Railroad Company desired and proposed to connect their Garden street branch with the main line of their road, at the intersection of Erie and Prospect streets, and thereupon the council granted to the railroad company the "right to lay down a double track street railroad in Ohio street from their present track in Brownell street to Erie street, and in Erie street

from Ohio street to Prospect street, to connect with their main track at this point." This made a junction at Erie and Prospect streets, with the Euclid Avenue Railroad, instead of at Brownell and Prospect streets, a small difference as to length of road.

On the twenty-third of May, 1876, the council authorized the East Cleveland Railroad Company to extend the Garden street branch of its road at the easterly end thereof along Garden street to Baden avenue, thence to Quincy, along Quincy to New, and along New street to Garden street, there to connect with the Garden street tracks. The ordinance provided that the right therein granted should continue for twenty years from that date.

This extension placed a track in Quincy street from Baden to New street, which was a very short distance. It did make a different date for the termination of the grant than was provided for the rest of the branch, and it was to be operated "in connection with said branch and its main line." No increase of fare was to be charged by the company on any part of its branch or of its main line or extension by reason of the extension.

In the year 1880, on the twenty-second of March, the council passed an ordinance authorizing the East Cleveland Railroad Company to extend the Garden street branch of its railway, from the then existing track, at the intersection of Baden avenue and Quincy street, on and along said Quincy street, in an easterly direction to the intersection of Quincy street and Lincoln avenue, "and to equip and operate the said extension *and its Garden street branch* for the period of twenty-five years from and after the passage of the ordinance." When this ordinance was passed the eastern limits of the city of Cleveland had been extended, so that the territory covered by the grants to the Garden street line was at that time included in the city of Cleveland.

In 1885, February 9, the council passed an ordinance permitting the East Cleveland Railroad Company "to extend its

Garden street branch from the intersection of Quincy street and Lincoln avenue, in an easterly direction, to Woodland Hills avenue,   .   .   .   and equip and operate said extension as a single track railroad, with all necessary switches, turnouts and turntables" in connection with said branch and its main line, and terminating with the grant for the main line, but with the express condition that "no increase of fare shall be charged by said company on any part of its main line, or on said extension, by reason of said extension."

On the seventeenth of June, 1887, the council granted another extension to the Garden street branch, on Garden street from Baden avenue easterly to Lincoln avenue, the grant to terminate "with the grant for the Garden street main line," and no extra fare.

On the tenth of March, 1890, the council passed an ordinance which "granted the right to operate its Garden street branch by electricity" from and to the points named in the ordinance, and this grant was "to operate by electric power the said Garden street branch during the term of its present grant for said Garden street branch." Both roads were thereafter operated as electric street railroads.

On the thirtieth day of March, 1891, another ordinance was passed, authorizing the railroad company "to operate a second or additional track in and upon Central avenue (Garden street) from the east line of Willson avenue to the Cleveland and Pittsburg Railroad tracks." It was provided that the "right herein granted shall be valid until the expiration of the grants for the said company's main line."

On the twentieth of April, 1891, an ordinance was passed which authorized the railroad company to "operate a second or additional track in and upon Quincy street from New street to Woodland Hills avenue." This was part of the Garden street line. Section 3 of the ordinance contained the provision that the "right herein granted shall be valid until the expiration of the grants for said company's tracks on said Quincy street east of Lincoln avenue, to wit, July 13, 1913."

These are the material ordinances which particularly relate to the Garden street railroad.

During March and April, 1893, the complainant herein was organized as a consolidation of several street railroads, which, it is enough to say, included, among others, the Euclid avenue and the Garden street lines, and on the twenty-second day of May, 1893, the consolidated railroad company (this complainant), through its vice-president, addressed a communication to the council, stating that the various consolidations had been made under advice of counsel, but inasmuch as some question seemed to have arisen as to the intention of the company, it was stated that the company did not claim any rights greater than the constituent companies forming the organization; that it intended to obey all ordinances to which each and all the constituent companies were subject, and that it had, since the consolidation had been effected, issued transfer checks to all persons desiring them, to enable such persons to have a continuous ride from any East Side line to any South Side or West Side line, and from any South or West Side line of the company to any East Side line, for one fare, and would continue such system of transfers where it could not better accommodate its patrons by such through lines as it might establish; and that it disclaimed all intention of charging more than one fare for any such continuous ride; "and that its aim has been and will be to give its patrons vastly improved service and accommodations by reason of such consolidation."

The council thereupon, by resolution, consented to the consolidation of the various railroad companies named in the resolution under the name of the Cleveland Electric Railway Company, upon the condition that "only one fare shall be charged for a continuous ride on or over any line of railway formerly owned by any other of said constituent companies within the limits of the city of Cleveland; and passengers on any of such lines paying one fare shall be entitled, without extra or additional charge, to be transferred to any other of said lines and have a continuous ride thereon for said single fare." The con-

ditions contained in the resolution were thereafter accepted by the complainant in writing.

On the nineteenth day of February, 1894, the council adopted "an ordinance granting permission to the Cleveland Electric Railway and the Cleveland City Railway Company to extend their tracks in Willson avenue." This avenue runs north and south and crosses many of the avenues in which some of the constituent companies of the consolidated road had laid their tracks.

The ordinance granted each railroad company the right to extend its double track railroad along Willson avenue from and to the various points named in the ordinance, and the road was to be constructed and operated in connection with the existing tracks in Willson avenue as a double track street railroad. The two companies named in the ordinance were to jointly construct and maintain the road, and each was to have the right to occupy and use the track, wires, etc., of the other company then in Willson avenue, on such terms and conditions as the council might deem just and reasonable, unless the companies should otherwise agree. Provision was then made for the running of through cars on Willson avenue between certain points, and night cars were to be operated by the companies throughout the entire length of Willson avenue. A passenger on any car operated on any part of said Willson avenue was to have the right, on the payment of one fare, without additional or extra charge, to be transferred to any other line of either of said companies intersecting or coming to said Willson avenue, and were to have a continuous ride thereon, with the right, without additional charge, to be transferred from said second line to a car on any other line of either of these companies intersecting or coming to Willson avenue, and were to be entitled, without additional or extra charge, to be transferred to the Willson avenue line and to have a continuous ride thereon. Regulations were made for the paving of certain portions of the street by the company under the direction of the city authorities, and provision was made for widening the roadway on Willson avenue

between certain points named, and for setting back curbs, hydrants, etc., all of which was to be done at the expense of the companies, which were also to comply with and perform all the general ordinances of the city relating to street railroads, then or thereafter in force.   By section 10 it was provided that the grant should be in force until the first day of July, 1914.

On the twenty-fifth of June, 1894, the council passed "An ordinance granting the Cleveland Electric Railway the right to extend and operate its double track street railroad in Quincy street from New street to Willson avenue."   This ordinance provided for the extension and operation by the Cleveland Electric Railway Company of a double track street railroad on and along Quincy street, from its then present tracks thereon, westerly to Willson avenue, connecting by curves with its Willson avenue tracks.   The sixth section provided that "This grant shall terminate with the grant for said company's present line in Quincy street."

These ordinances and resolutions are those which particularly relate to the extent of the grants to the railroad company for the Euclid avenue and for the Garden street lines.   Other ordinances and resolutions were passed, showing, in connection with those already in evidence, as insisted upon by the complainant, the existence of a general system for the operation of the roads owned by the complainant, including the Euclid avenue and Garden street lines, as a unit, and the necessity existing for operating all of the lines in connection with each other for the life of the longest grant.   And it is insisted that this was the obvious intention of the council, to be gathered from the various ordinances, among them those especially above adverted to.

*Mr. William B. Sanders* and *Mr. John W. Warrington,* with whom *Mr. Andrew Squire* was on the brief, for Cleveland Electric Railway Company.

The Garden street tracks involved were, and are extensions, of the "main line" of the East Cleveland Railroad Company.

The grant for the "main line" does not expire before July 13, 1913, in fact not until July, 1914.

By consistent and uniform legislation, the council has provided that the Garden street extension should be operated in connection with the "main line" and the right to operate expires with the grants for the "main line." This is expressly so provided in the ordinance of 1885, and in two ordinances in 1891.

In 1893 the council fixed the terms and conditions of the consolidation forming the appellant. The grants of the constituent companies as then provided expired as follows: Broadway & Newburgh Co., July, 1914; the East Cleveland Co., July, 1913; the South Side Street Co., October, 1913; the Brooklyn Street Co., January, 1910; and, as a condition of such consolidation, the council required thereafter the operation as an entire system of all the lines of the constituent companies, with through car service and general transfers. In order to comply with these conditions and exercise the right granted to the consolidated company, operation must be continued until the expiration of the longest grant, to-wit, July, 1914.

In 1894 the council provided for the construction by the Consolidated Company and The Cleveland City Railway Company of a cross-town line in Willson avenue, and for the operation of such line in connection with all of the lines of the Consolidated Company, including the Garden street extension. The operation so required of the Consolidated Company, the ordinance provided, should continue until July, 1914,—this being the date of expiration of the longest grant held by the Consolidated Company. The conditions of this cross-town ordinance cannot be complied with, nor can the railway company exercise the rights there granted in consideration of its expenditures in building the line, without the operation of the Garden street extension to July, 1914.

The city received full consideration for these grants, and the extensions were not for an unreasonable time: only for such time as made the right to operate an extension track

expire at the same time as the "main line" of which it was an extension, and permitted operation in connection with the cross-town line for such period as was necessary to fulfill the obligation and exercise the rights granted in the ordinance establishing such cross-town line.

The right of the appellant to operate the Garden street extension did not, as decreed below, expire in March, 1905; but by virtue of existing contracts, which cannot be impaired, appellant is entitled to operate the tracks in controversy until July, 1914.

*Mr. Newton D. Baker* for the city of Cleveland.

*Mr. D. C. Westenhaver* for the Forest City Railway Company.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

Out of these various ordinances and resolutions arise the difficulties suggested in this case. The facts are somewhat complicated by reason of their number, and the inferences to be drawn from them are not always perfectly plain and certain. The complainant contends that, by reason of the action of the city council and the acceptance by the complainant of the various ordinances and resolutions adopted by that council, a valid contract has been entered into between the city and the complainant, by which the right to use the streets named in the ordinances by the Garden street branch has been granted to complainant up to July 1, 1914, or, if it is mistaken as to that time, that then the contract terminates on the thirteenth of July, 1913. The city contends that neither date is right, but that the contract, so far as it related to the Garden street branch, terminated on the twenty-second of March, 1905.

The rules of construction which have been adopted by courts in cases of public grants of this nature by the authorities of cities are of long standing. It has been held that such grants should be in plain language, that they should be certain and

definite in their nature, and should contain no ambiguity in their terms. The legislative mind must be distinctly impressed with the unequivocal form of expression contained in the grant, "in order that the privileges may be intelligently granted or purposely withheld. It is matter of common knowledge that grants of this character are usually prepared by those interested in them, and submitted to the legislatures with a view to obtain from such bodies the most liberal grant of privileges which they are willing to give. This is one among many reasons why they are to be strictly construed." *Blair* v. *Chicago,* 201 U. S. 400, 471. In the case cited this court has had occasion to state the principle of construction and to cite some of the authorities upon which it is based. This has been so lately done that it is unnecessary to more than refer to that case as authority for the doctrine above stated.

Before proceeding with an examination of the various ordinances and resolutions referred to in the foregoing statement, it is well to say that we do so upon the assumption that the legislature has heretofore granted to the city council of Cleveland most comprehensive power to contract with street railroads within its limits, with regard to the use of its streets, and the length of time for which such use may be granted, not longer than twenty-five years. *City of Cleveland* v. *Cleveland City Railway Company,* 194 U. S. 517, 533; *Cleveland* v. *Cleveland Electric Railway Company,* 201 U. S. 529, 541. Therefore, in deciding this case, we assume the validity of the contract, whatever it is, that was made. The only question involved herein is one of construction and intent.

The most important of the many ordinances and resolutions relating to the Euclid avenue line, commencing in 1859, have been referred to in the foregoing statement of facts because of the contention of complainant that the Garden street branch is nothing but an extension and, in reality, as in law, a component part of the Euclid avenue line, and that the Garden street grant is limited and governed by the time of the expiration of the Euclid avenue grant. In other words, that the grant

of 1888 to the Euclid avenue line of the right to change its motive power, and extending the termination of the grant until twenty-five years from that date, thereby extended the termination of the grant to the Garden street branch to the same time, although the whole branch road had been separately and otherwise provided for, and had never before had the same termination as the Euclid avenue line. The grant is to be implied which is to work such a change in a grant then existing in specific and direct language. The same argument is also set forth in regard to the ordinance of July 17, 1893, which will be again referred to.

Under these circumstances it is important to direct special attention to the Garden street branch.

The East Cleveland Railroad Company, having built and operated its road through the various streets mentioned in the ordinance of 1859, granting it leave so to do, became desirous of building another road in connection with the one it was then operating, but there was no statute at that time in Ohio permitting the extension of a road then built, and the company therefore in 1867, and the early part of 1868, took the same proceedings to acquire the right to build the new road that it had taken to build the former, although it did not seek a new incorporation. As a railroad company already existing, it applied to the council of the city of Cleveland for leave to construct a street railroad from the intersection of Prospect and Brownell streets, to connect with the main line of its road, and thence through various streets and along the center of Garden street, to and across Willson avenue, to the easterly boundary of the city. It procured the consents of the property owners along the line; notice for the reception of bids was published by the city as provided for in the statute, and the railroad company made a formal bid for the privilege of laying down its tracks through the various streets, and named the rates of fare which would be charged. That bid was the lowest, if not the only one, made, and it was duly accepted, and the privilege was granted to build a railroad in Garden street, and to operate

it for twenty years from the date of the adoption of the ordinance, January 14, 1868, and the company was to continue to use the western end of the Euclid avenue road as stated in the ordinance. The ordinance was accepted and the road built. At this time the grant to the Euclid avenue line expired September 20, 1879.

Referring to the procedure under which the Garden street branch was created and the permission of the city council to build the road obtained, it is plain that the branch thus built was not a mere extension or part of the Euclid avenue line, so that a grant to the latter necessarily covered the other as an inseparable part of it, but was a distinct line, with a separate route, with the exception of a short distance at the west end, where it was permitted to use the tracks of the Euclid avenue line. The termination of the right was at a different time from that provided for the Euclid avenue line. This use of the Euclid avenue tracks for a short distance did not make the Garden street branch a mere extension of the former road. Whether authorized by its charter to build the Garden street road is not important. It did so, and its right to do it was given by an ordinance of the council, which has been recognized as valid ever since. Because on some occasions it has been called a branch does not alter the weight to be given the facts stated, or turn the branch into a mere extension where it has been otherwise uniformly treated.

It is contended that by the resolution of March 25, 1873, which granted to the East Cleveland Railway Company the right to lay a double track street railroad, intersecting with its main line at Erie street and Prospect street, and thence through other streets mentioned in the resolution, the Garden street line thereby became an extension of the main line, or was recognized as a mere extension. The preamble to that resolution recites that the railroad company desires to connect the Garden street branch with the main line of their road at the intersection of Erie and Prospect streets, and to remove the other track from Brownell street, between Ohio and Prospect streets,

and therefore permission is granted to the company so to do. That resolution provided simply for changing the connection of the Garden street branch with the Euclid avenue line from Brownell street to Erie street, and for the taking up of the track on Brownell street, between Ohio and Prospect streets. It did not make the Garden street branch any more of an extension of the main line than it had been before. The branch road certainly did not become a part of the main road, simply because it ran in connection with it, or because it ran over a small portion of the tracks of that road. It remained what it started out as, a road with a separate route and a different term of life.

The grant made in 1876 to the company to extend its Garden street tracks from its then terminus at Baden street, to and along other streets towards the east, with the right to equip and operate said extension for twenty years, in connection with the said Garden street branch and its main line, had no effect upon the question we are discussing. That extension of the tracks of the Garden street branch spoken of in the ordinance was also a short one, and was to terminate at a different time from that then existing in regard to the other portion of the Garden street branch. That it was to be operated in connection with its Garden street branch and the main line did not make the branch as extended a part of the main line, or alter the fact that the branch was a separate road, although operated in connection with the main line. It is quite difficult to see why the right to operate this particular extension should have been granted for twenty years or until 1896, instead of being limited to terminate with the branch, but at any rate, the grant is in unambiguous terms, and states in so many words the length of time it is to last. Its importance is not very great, and is entirely effaced by the subsequent ordinance of 1880, which provided for the termination of the whole Garden street branch at the time specified, 1905.

By that ordinance (March 22, 1880) the question of the termination of the grant for the whole Garden street branch was distinctly settled. By it the right to extend that branch of its

railroad in an easterly direction, on and along Quincy street, was given to the company, and the right "to equip and operate the said extension and its Garden street branch" was given for the period of twenty-five years from the passage of the ordinance, but without increase of fare on any portion. This, of course, placed the termination of the whole grant to the Garden street branch on March 22, 1905. There is no ambiguity as to this grant, and the termination of the grants to the two roads was kept apart, one being September 20, 1904, the other March 22, 1905.

Much stress is laid by the complainant on the ordinance of the ninth of February, 1885, which was entitled "An ordinance to permit the East Cleveland Railroad Company to extend the Garden street branch of its railway." The company was thereby authorized to extend the Garden street branch from the intersection of Quincy street and Lincoln avenue, in an easterly direction, to Woodland Hills avenue. It was to be operated in connection "with said branch and its main line and terminating with the grant for the main line," but with no increase of fare. It is contended that the particular grant mentioned in this ordinance was to terminate with the grant for the main line, which would make it terminate September 20, 1904, instead of March 22, 1905. If this were the only question, of course the complainant would not insist that the grant to it should be shortened six months. But it is cited for the purpose of showing an intention of the council to limit the termination of the Garden street branch by the limitation then existing in regard to the Euclid avenue line. It is contended that from the time of the passage of this ordinance by the council and its acceptance by the complainant the parties thereby agreed that the extension should be operated with the main line, and that its grant for such operation should expire with the grant for the main or Euclid avenue line, and that this was in pursuance of the plan by the city to have the grants to the two roads expire at the same time. And the claim is that the subsequent ordinances must be construed in the same manner

and for the purpose of carrying out the same scheme. There is here undoubtedly some room for the contention of complainant, but we think, upon looking at all the facts in connection with this question, that the intention of the council was not that way. The Garden street branch, running from the intersection of Erie and Prospect streets, towards the east, terminated, at the time of this grant, at Lincoln avenue. This made a long line of road. By the ordinance it was lengthened from Lincoln avenue to Woodland Hills avenue, a comparatively short extension of track. The right granted to the whole branch line as far east as Lincoln avenue then terminated on the twenty-second of March, 1905, and yet by this construction of the ordinance of 1885 this small extension of track from Lincoln avenue to Woodland Hills avenue was to expire September 20, 1904. Why this difference? The ordinance did not assume in any way to alter the time of the termination of the then existing grant to the rest of the Garden street branch, but it simply limited the time of the termination of the grant for the extension then given. Hence it is difficult to see how any agreement can be found to arise from the ordinance for the simultaneous termination of all the grants to both the main line and the Garden street branch. Nor can any general scheme to have the grants of both roads terminate together be evolved from anything done by the parties up to and including 1885.

There is nothing in *Cleveland* v. *Cleveland Electric Railway,* 201 U. S. 529, 539, that covers this case. The language of the ordinance adverted to in that case is to be applied to very different facts from those existing here. We assume the ability of the council to make such a contract as complainant contends for herein, but we think none such was made in fact.

So far as can be determined from this record, there was absolutely no reason for terminating the right to use this small extension of track in September, 1904, while the rest of the branch then existing was not to terminate until six months later. It cut up the branch line in a way which it is impossible from this record to give any reason for, and accordingly, under

the then existing circumstances, it might be argued that the words, "terminate with the grant for the main line," did not mean the Euclid avenue line, but it referred to the Garden street branch, which was, as a matter of fact, the main line so far as concerned the small extension of the track from Lincoln avenue to Woodland Hills avenue. To terminate the grant for the extension at the same time with the grant for the line thereby extended would be the most obvious and natural course to pursue. It is true the ordinance itself recognizes the "branch and its main line" as constituting two different lines, and provides that the grant is to terminate with the grant for the main line. And yet the real meaning of the ordinance, when regarded in the light of the facts then existing, becomes, to say the least, ambiguous. The general provision for the termination of the grant for the whole Garden street branch, as made in 1880, ought not to be expunged by an implication arising out of such doubtful language as is found in this 1885 ordinance. But if otherwise, it results only that the particular extension expired in September, 1904, with the grant to the Euclid avenue line, which, at that period, expired on that date.

In 1887, June 17, an extension of the Garden street branch was granted, which, by the terms of the ordinance, was to terminate "with the grant for the Garden street main line," without increase of fare being charged. Here the council, it will be observed, expressly referred to the Garden street branch as the main line, and it is undoubtedly plain that it was properly so referred to. In extending the branch, and with reference to the extension, the branch would naturally be regarded and spoken of as the main line. If not done in all cases it is somewhat difficult to find any reason for it.

Again, by an ordinance passed March 10, 1890, granting leave to change the motive power on the Garden street branch, the right was given to operate that branch by electric power "during the term of its present grant for said Garden street branch." The "present grant" for the Garden street branch

was that which was granted in March, 1880, which was to terminate in twenty-five years, or March 22, 1905. Here was a clear recognition of the time when that grant expired, and there had been no ordinance or resolution of the council, since 1880, which, in our opinion, changed the termination of that grant. It is an entire mistake to say that at this time the right to operate the Garden street tracks terminated at the same time with the right of the company to operate the Euclid avenue line, or that the Garden street branch was but an extension of that line.

On the thirtieth of March, 1891, the right was granted to construct and operate a second or additional track upon Central avenue (Garden street) from the east line of Willson avenue to the Cleveland and Pittsburg Railroad tracks. It was provided in that ordinance that the right therein granted should be for and until the expiration of the grants for the said company's main line. Here again the question arises what was the meaning of the expression "main line" as used in this connection. The ordinance allowed a second or additional track in a street in which the company then had the right to use, and was using, a single track. So far as that extended grant was concerned, the main line was the rest of the Garden street branch, and the same observations that we have made heretofore in regard to the main line are operative here.

It cannot be possible that it was intended to limit the right to use the second or additional track, in the portion of the street mentioned, to a different time than that which existed with relation to the first track laid down by the company in the same street. Of course the two grants were meant to terminate at the same time.

At this time the grant to the company's Euclid avenue line had been extended so that it did not expire until July 13, 1913. Can it be supposed that the council intended that this short length of road, in which a second or additional track was to be laid, was to be operated with two tracks until 1905 and after that with one track until 1913? We think such a construction

is not permissible, and that what is meant by the language, "main line," in that ordinance, means the line which is the main line with reference to the extension therein granted, namely, the Garden street branch, and not the Euclid avenue line.

The ordinance of the twentieth of April, 1891, is somewhat important. It granted the East Cleveland Railroad Company permission to lay an additional or second track in Quincy street, from New street to Woodland Hills avenue. That street at the point indicated is part of the Garden street branch, and, as compared with the rest of the Garden street branch, is a very small portion thereof, and the ordinance only grants the right to lay an additional track. The right granted was, by the terms of section 3, to "be valid until the expiration of the grants for said company's tracks on said Quincy street east of Lincoln avenue, to wit, July 13, 1913."

It is said that the council, in such ordinance, expressly authorizes the continuation of the operation of this Central avenue (Garden street) extension until July 13, 1913, the date of the expiration of the Euclid avenue line of the company. But the language used in this ordinance as to the time of the expiration of the grant for the company's tracks on Quincy street, east of Lincoln avenue, is a clear mistake of fact. The grant, it will be observed, is not in terms an extension to July 13, 1913. The reference to that date is but the expression of an opinion that the date named is the true time of the termination of the Quincy street grants. It is not a grant extending to that date, unless the previous grants are limited to that time. Now, on April 20, 1891, the grants on Quincy street, east of Lincoln avenue, in fact terminated either in 1904 or 1905, depending upon the construction of the language of the original grant on Quincy street, made in February, 1885. That was a grant which was to expire with the termination of the grant for the main line. For the reasons already given we think that that language meant the Garden street branch, which was the main line as to that extension, and that it, therefore, ex-

pired in 1905, March 22. There was no subsequent legislation which extended that grant beyond that time.

But if it be assumed that the grant for the company's tracks on Quincy street, east of Lincoln avenue, was to terminate with the grant for the Euclid avenue line as the main line, it must be recollected that that grant on Quincy street was made February 9, 1885, to the Garden street branch, and at that time the grant to the Euclid avenue line terminated in September, 1904. The grant of 1885 was not made to terminate with the grant for the main line, *as that main line might thereafter be extended,* but it referred to that grant as it then existed, and it was to be measured by such existing grant, and not by any subsequent extension which might be granted to the Euclid avenue line.

Nor do we think the time for the termination of the Garden street branch was in any degree affected by the consolidation of the various roads in 1893. The communication from the railway company, through its vice-president, May 22, 1893, states distinctly that it "does not claim any rights greater than the constituent companies forming the organization, and that it intends to obey all ordinances to which each and all of the constituent companies were subject." Its intention to issue transfer checks, so as to have a continuous ride for one fare, gave no greater rights to the company than it theretofore had, nor did the resolution of the council, consenting to the consolidation on condition that but one fare should be charged for a continuous ride, give any greater rights to the consolidated company than each of the constituent companies had theretofore enjoyed. The consolidation does not require, in order to comply with the conditions specified in the resolution consenting to the consolidation, that the consolidated companies should be permitted to operate until the expiration of the longest grant to any of the companies. At the expiration of the grant to the Garden street branch the operation of that road might terminate, while the operation of the rest of the consolidated roads could go on perfectly well. To hold that by virtue

of the consolidation, upon the conditions stated, there was an implied extension of the grant to the Garden street branch of at least eight years, is to violate the rules of construction above referred to in regard to grants of this nature.

It is also strongly urged by the complainant that the ordinance passed soon after the consolidation ordinance, viz., the ordinance of July 17, 1893, not only imposed additional burdens on the consolidated company, but that the ordinance relates to a portion of the line originally constructed as part of the Garden street branch, and that it also required the operation of all the Garden street cars over these tracks, so that the council legislated as to the operation of the tracks upon Garden street and provided that such operation should continue until July 13, 1913. It is true the ordinance provided that the grant therein made should be limited to the above date, and there were certain conditions attached to the making of the grant, but it is quite plain to us that the ordinance could not be read as thereby extending the time for the termination of the Garden street branch without a most violent implication, based upon a very small foundation. This is made clear when it is seen that the streets through which the ordinance provides for extending the double track railroad formed no part of the line originally constructed as part of the Garden street branch. The latter road was permitted to use, for a short distance, the tracks of the Euclid avenue line from a point at the junction of Brownell street (subsequently made Erie street) with Prospect street, west to the public square. But that portion of the track of the Euclid avenue line was never part of the line originally constructed for the Garden street branch, nor did it become such because subsequently the branch road was permitted to use it for the passage of its cars to the public square. It is quite clear, therefore, that the limitation of the time for the termination of the grant provided for in the sixth section of the ordinance was not also an extension of the time for the termination of the separate grant to the Garden street branch from 1905 to 1913.

The same may be said of the ordinance of February 19, 1894,

extending the tracks in Willson avenue. While the council consented to the extension by the complainant and the Cleveland City Railroad Company of the line of railway in Willson avenue, and also to the operation of that line in connection with other lines of the consolidated company, which included the Garden street branch, yet it cannot be held that there arose from that ordinance, when accepted by the company, a contract which should extend the time on all of the roads until the expiration of the grant contained in that ordinance, July 1, 1914. By such means an implied extension of time, affecting over 200 miles of track, as is stated, would be accomplished by making these conditions in regard to the Willson avenue grant a substitute for a grant, in plain language, affecting the Garden street branch. On the contrary, we think that the effect of that ordinance was simply to make it necessary for the Garden street branch and the other roads also, to comply with the conditions set forth in the ordinance until the expiration of their respective and existing grants, but that ordinance did not thereby extend the various other railroad grants by implication. There is no such connection between the various roads as to make it necessary, in order to operate one, that all the others should be in operation as a unit, and as comprehending one indivisible system. There is nothing in this record which shows any difficulty whatever in operating the Garden street branch as separate from the rest of the so-called system, or in operating that system separate from the branch. If the council had intended to extend the time of the termination of the various grants to these railroads it surely would have said so, and not left it to such vague and uncertain presumptions.

The chief importance of the various ordinances and resolutions for the extension of the Garden street branch, coupled with the user of the tracks of the Euclid avenue line by the branch road from Erie street west to the public square, and providing for but one fare over the whole road, is to strengthen, if possible, the contention of complainant that such branch has always been treated by the city and the company as a mere

extension of the Euclid avenue line and to be operated in connection with it, so that a grant extending the time of the termination of the latter line included thereby the Garden street branch. We think the contention is not justified by the facts. The whole history of the branch line shows differently. Even in the important matter of a change of motive power, the Euclid avenue line was provided for in 1888 and 1889, while there was a separate and distinct provision made for the Garden street branch in 1890, and a statement therein made that the permission was granted to the Garden street branch during the term of the present grant to said branch.

A careful examination of the whole record leads us to the opinion that there is no error therein so far as the complainant's appeal is concerned, and the decree upon its appeal is

*Affirmed.*

Upon the appeal of the defendants, we think little need be said. The defendants insist that, upon the termination of the grant to the Garden street branch, the rails, poles and other appliances for operating that road, and then remaining on the various streets, became the property of the city or at least that the city had the right to take possession of the streets and of the rails, tracks, etc., therein existing. We agree with the court below in the opinion that the title to the property remains in the railroad company which had been operating the road, and we are of opinion that The Forest City Railway Company had no rights in the streets, so far as to affect the right of the complainant to its property then existing in such streets. How that property may be disposed of is not now a matter before this court. We only hold that the defendant company cannot avail itself of the provisions of the ordinance of January 11, 1904, so far as taking possession of the property of the complainant is concerned.

The decree upon the defendant's appeal is also

*Affirmed.*