Davis, J.
This case was orally argued and submitted six months ago; but, on account of its great importance to the public as well as to all public *50 service corporations, we have given it unusual consideration and we have reached our conclusions only after most careful deliberation.
The chief question for solution here is whether the plaintiff in error may, under the circumstances disclosed in the record, discontinue the furnishing of gas to the city of Akron and its inhabitants and take away from the streets its mains and pipes and, in short, its whole plant.
In seeking an answer to this question it will be necessary first to consider the nature of the franchise granted to the plaintiff in error by its charter and the extent of the obligation imposed upon it by its acceptance of the city ordinance under which it entered the city and served the public therein until September 26, 1908. The- distinction between franchises, privileges or powers of a corporation, on the one hand, and its duties, obligations or liabilities, on the other hand, is elementary. There are no obligations imposed upon the plaintiff in error by its charter, or by the statutes under which it was granted, except the requirement that it shall have a principal office to be located at Cleveland and that the company’s main line shall commence at points on the Ohio river and run thence through certain counties to Cleveland in Cuyahoga county. These with the further obligation imposed by statute (Section 6780, Revised Statutes) that the company shall allow no lapse in the exercise of its franchise of the extent of five years, constitute all of the positive conditions, so far as we are now concerned, which are imposed upon this company. It seems to us that when to this association of persons was granted the right to be a corporation *51 “for any purpose for which individuals may lawfully associate themselves, except for-carrying on professional business” (Section 3235, Revised Statutes) the purpose is a privilege which may or may not be exercised to the full extent, just as individuals may modify their original designs to conform to circumstances. Therefore the statement in the articles of incorporation that the company is formed for the purpose of producing and furnishing gas to certain named towns and cities “and to other cities, villages and places in the counties aforesaid,” does not appear to us to be so indivisible that the company must conform to this purpose in all of such cities, villages or places or in none of them. As we construe the charter along with the statutes, the privilege conferred is of producing and transporting gas to each or all of the places named or described, and if to any' then in the manner described. The remedy for non-user or mis-user of the franchise lies with the state; and the defendant in error, the city of Akron, cannot invoke that remedy. Whatever rights the city may have to maintain this action, they must arise out of its contract with The East Ohio Gas Company; for that the ordinance passed in September, 1898, and its acceptance by the company constituted a contract will scarcely be disputed.
Whether a contract for the privilege of entering the streets of the city was necessary to the plaintiff in error or whether the defendant in error was competent to make it, is immaterial in this case. The consent of the city for that purpose was granted by the ordinance and it was accepted by the gas company; but no stipulation was made and *52 accepted as to the time when the use of the streets for the purposes of the gas company should end. The language of the ordinance is, “That The East Ohio Gas Company, its successors and assigns, are hereby granted the right to enter upon the streets, alleys and public grounds of .the city of Akron, Ohio, * * * to maintain, operate, repair and remove mains and pipes * * * together with the right to construct and maintain, repair and remove all necessary regulators,” etc. Did the granting of this privilege or right and its acceptance constitute an agreement by the gas company that, having entered the city, it should remain there forever if the city should not permit it to withdraw? The logic of the defendant in error would seem to support an affirmative answer to this question. But if the company enters by virtue of the contract and can withdraw only by consent of the city, then the contract lacks mutuality; for we can discover no corresponding stipulation in favor of the company. It is true that the ordinance grants the right to enter and occupy the streets, but in respect to the time when it shall terminate its occupancy and withdraw, the ordinance is silent. May we infer from this silence that the gas company has a perpetual franchise in the streets? We are not now prepared to hold that the company has thus acquired such a perpetual franchise; and we feel quite sure that even the defendant in error, on more mature reflection, would not insist upon such a conclusion. This court laid it down as the law, in Railroad Company v. Defiance, 52 Ohio St., 262, 307, that: “Every grant in derogation of the right of the public in the free and unobstructed use cf *53 the streets, or restriction of the control of the proper agencies of the municipal body over them, or of the legitimate exercise of their powers in the public interest, will be construed strictly against the grantee, and liberally in favor of the public, and never extended beyond its express terms when not indispensable to give effect to the grant.” The doctrine, as well as the judgment, in this case was affirmed in Wabash R. R. Co. v. Defiance, 167 U. S., 88. The same rule of construction was approved and followed in Blair v. Chicago, 201 U. S., 400, and in Cleveland Electric Ry. Co. v. Cleveland, 204 U. S., 116.
It comes then to this, that in the absence of limitations as to time, the termination of the franchise is indefinite and, to preserve mutuality in the contract, the franchise can continue only so long as both parties are consenting thereto. Or, to state it concretely, the contract being silent as to the duration of the franchise and the ten year agreement as to the price of gas having expired, the city may, under its power of. regulation, impose new conditions as to price and the gas company may accept or reject these. If the refusal to comply is final, the company necessarily incurs the penalty of forfeiture of its franchise to serve the people of the -city; but on the other hand, there being no provision to that effect in the original contract, the city cannot directly or indirectly deprive the gas company of its property without due process of law, when the latter withdraws from the further exercise' of its franchise. Cleveland Electric Ry. Co. v. Cleveland, 204 U. S., 116.
*54 In accord with Sections 2478 and 2479, Revised Statutes, in Section 6 of the ordinance, the parties entered into an agreement regulating' the price of gas for ten years from and after the passage of the ordinance, and so far as it appears in this record, this agreement has been faithfully kept by both parties and it is not now a subject of controversy. But it has been suggested, rather than argued, that this clause in the ordinance, viz.: “And the council of said city of Akron shall not, during the period of ten years from and after the passage of this ordinance, pass any ordinances fixing or attempting to fix the rates at which gas shall be supplied, at any lower price than there set forth,” raises an implied contract that the city may regulate the price after the expiration of the ten year term. When the written contract is silent in regard to a matter of so much importance to both parties, it is not to be lightly presumed that it was intended to imply an agreement upon that point. The implication should clearly appear from the whole instrument. While the courts will give effect to that which clearly appears to be the intention of the parties, yet the safe rule appears to be as stated by Lord Cockburn in Churchward v. The Queen, L. R., 1 Q. B., 173, 195-196, as follows : “But in all these instances, where a contract is silent, the court or jury who are called upon to imply an obligation on the other side which does not appear in the terms of the contract, must take great care that they do not make the contract speak where it was intentionally silent; and above all that they do not make it speak entirely contrary to what, as may be gathered from the whole terms *55 and tenor of the contract, was the intention of the parties. This I take to be a sound and safe rule of construction with regard to implied covenants and agreements which are not expressed in the contract.”
Keeping in mind this rule of construction, it seems to us that undoubtedly the city may regulate the price of gas after the expiration of the ten year term expressed in the contract, if the gas company continues to exercise its franchise in the city; but it may do so, not by virtue of the contract, but by virtue of the statute which empowers the city council to fix the price for a period not exceeding ten years. Having done so for a period of ten years from September 26, 1898, its power was not exhausted; but so long as the gas company continues to exercise its franchise within the city, the council may fix the price for any period not exceeding ten years, and so on until the gas company discontinues. This is in accord with the judgment o£ this court in Gas Light Co. v. Zanesville, 47 Ohio St., 35. The question there was whether Section 2478, Revised Statutes, could be applied to a company organized under the old constitution and which was endeavoring to disconnect its pipes from the street lamps and city buildings, but was at the same time continuing to supply the private consumers with gas. The question whether the gas company might wholly quit business in the city and withdraw by disconnecting and taking up its pipe lines, was- not in the case and was not considered. A reference to the twin case of Zanesville v. Gas Light Co., 47 Ohio St., 1, at page 10, will disclose the fact that by the ordinance under *56 which the Zanesville Gas Light Co. obtained the privilege to lay its pipes in the streets and alleys of Zanesville, it was expressly provided that, “The Zanesville Gas Light Company shall during such time as they enjoy the privileges granted by this ordinance, supply the town council with such quantities of gas as may be by them required for public lamps at a price not exceeding,” etc. Therefore, when it was held in Zanesville v. Gas Light Co., supra, that the price of gas might be controlled by Section 2478, Revised Statutes, it followed as held in Gas Light Co. v. Zanesville, supra, that if the gas company refused to obey the second ordinance regulating the price it might be compelled by mandatory injunction to do so, “so long as it continues to exercise and enjoy its franchises as a gas company,” which franchises were to be a gas company in Zanesville only. If The East Ohio Gas Company were insisting upon a right to furnish gas to some of its patrons in Akron and at the same time refusing to do the same service to others, it is not doubted that the doctrine of the Zanesville case would -receive great consideration, notwithstanding that the original Akron ordinance does not contain the controlling provision which is found in the Zanesville ordinance. But that is not this case.
The defendant in error seems to be insistent that inasmuch as the plaintiff in error is a corporation serving the public, it in some way becomes absolutely subject to control by the public which it serves. The answer to this claim is very well expressed by the Supreme Court of the United *57 States, speaking through Chief Justice Waite, in Munn v. Illinois, 94 U. S., 113, 126: “Property-does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in éffect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use; but, so long as he maintains the use, he must submit to the control.”
Defendant in error also claims that the statement made in the amended answer of The East Ohio Gas Company, that it intended to relinquish and surrender its privileges and franchises, granted to it by the ordinance of September 26, 1898, and wholly to retire from said city, is a mere threat, which is intended to intimidate the city of Akron and its inhabitants, and if carried out would be an unlawful discrimination. It does not appear in the record that the gas company is not making that declaration in good faith; and when it does so appear it will then be the proper time to consider it. The entire abandonment of its franchise in Akron and seeking its fortunes elsewhere within the charter limits, do not constitute unlawful discrimination as generally understood.
It is not deemed necessary to review and distinguish the numerous authorities cited for the defendant in error. We heartily assent to very many of them, but they do not seem to us to be applicable *58 tó the precise issue which we here have under consideration.

Judgment reversed and judgment for plaintiff in error.

Crew, C. J., Summers and Price, JJ., concur.