THE TOWN OF SEAFORD, a municipal corporation of the State of Delaware,

*vs.*

EASTERN SHORE PUBLIC SERVICE COMPANY, a corporation of the State of Delaware.

*Sussex, June* 25, 1937.

*James R. Morford,* of the firm of Marvel, Morford, Ward & Logan, and *William H. Bennethum,* both of Wilmington, and *Ralph S. Baker,* of Georgetown, for complainant.

*Frank M. Jones, James M. Tunnell,* and *James M. Tunnell, Jr.,* of the firm of Tunnell & Tunnell, all of Georgetown, *Caleb S. Layton,* of the firm of Richards, Layton & Finger, of Wilmington, and *Frederick W. C. Webb,* of the firm of Woodcock, Webb, Bounds & Travers, of Salisbury, Md., for the defendant.

THE CHANCELLOR: The right of the complainant to an injunction against the defendant's continued occupancy of the streets of Seaford with its poles, etc., was sustained in the opinion filed at the demurrer stage of this case. (*Ante p.* 1, 191 *A.* 892.)

The present question arises on the terms of the final decree. The complainant seeks a decree which would require the defendant to remove its poles, etc., from the streets and discontinue its service not later than November 30, 1937, and not earlier than November 1, 1937. These dates are suggested because, the evidence shows, the grantee of the new franchise will have completed the erection of and installation of its facilities, now in progress, not later than November 1, 1937.

To that part of the proposed decree which fixes November 30, 1937, as the limit of time for the defendant's continued occupancy of the streets, the defendant interposes no objection on the score of the court's power. Naturally it would not, for it extends to the defendant a period of grace for the removal of its equipment.

To that part of the proposed decree, however, which would require the defendant to maintain its electric service until November 1, the defendant seriously objects. If, it argues, its franchise is terminated, it follows that a duty to supply the town with electric current no longer rests upon it by any contract obligation, and it is beyond the power of the court to compel it to continue in the service *for any length of time whatever.*

The sort of decree which the town suggests is quite manifestly designed to adjust the transition of the electric service business from the hands of the defendant, the old grantee of the franchise, to the hands of the new grantee of the franchise, in such way that the town and its citizens will suffer no interruption nor inconvenience in their receipt of electric current.

When a municipality grants a franchise of limited duration to a utility company to use the streets for the purpose of supplying to the community such a modern essential of comfort as electric current for purposes of light and heat, the parties frequently if not generally in their contract anticipate the arrival of the day when the franchise will terminate by its own limitation and accordingly make some provision for the orderly adjustment of their mutual rights. In the instant case no provision was made in the contract for any such adjustment. When the franchise expired on June 8, 1935, if we look solely to the contract's express terms for guidance, the town was under no obligation to permit the defendant to continue in occupancy of the streets a single day longer, and the defendant was free to discontinue its services immediately, leaving the town in darkness. As of when the franchise was granted, a practical situation was bound to arise twenty years hence, which the parties must be supposed to have foreseen, but which they omitted entirely to provide for. It was a situation which, if either party was permitted to deal with it according to strict contractual right, was capable of great injury to the other. If the town had proceeded to compel the defendant forthwith to dismantle its equipment, the result would have been one of waste and loss to the defendant which, if a reasonable time had been allowed, might have been greatly reduced if not avoided. On the other hand, if the defendant stood on its strict contract rights and had ceased immediately upon the expiration of the franchise to supply electric current to the town and its residents, the injury to the

community would be manifest. As a practical matter the defendant could not have supplied current up to the last minute of the last day of its franchise and have been off the streets by the first minute of the day when its right to occupy the streets had ceased.

Neither the town nor the defendant pursued a course founded on strict contractual conception. The defendant continued with the service and the town suffered the streets to be continued to be occupied. It is so today. The town has now granted a franchise to another company and it desires that the defendant shall, as soon as the new equipment is ready for use, discontinue its service and remove its equipment from the streets. The defendant has consistently maintained an attitude of resistance to the town's desire to grant a franchise to another company, and has declared that it proposes to continue as heretofore to carry on its business of supplying electric current to the town and its residents. This attitude must undoubtedly have had the effect of causing something of a delay in the carrying forward of the town's arrangements with the new grantee of the franchise. Now that the new grantee has its work under way to such an extent that the time when its facilities will be ready for use is in sight, the town is asking that the decree shall enjoin the defendant from discontinuing its services for a few months longer, when the change from the old to the new service may be effected without inconvenience to the public.

When a situation of this nature develops, it appears to me to be reasonable to say that the public has a right to be considered. I do not mean, of course, to intimate that the public has any right to insist that the defendant shall continue indefinitely to supply electric current to the town. As the town has a right to refuse to renew the franchise, so the defendant has a right to insist that if the franchise is not renewed it will cease its operations. As a broad proposition, it is true that each party, on termination of the

relationship, is at liberty to bid the other farewell and go its own way. *Cleveland Electric R. Co. v. Cleveland,* 204 *U. S.* 116, 27 *S. Ct.* 202, 51 *L. Ed.* 399.

This case is not one, however, where it is sought to compel the defendant to continue indefinitely at the will of the town to supply its electric service. The defendant has, even though the franchise has expired, voluntarily been supplying the service. Should it be allowed, in light of the circumstances, to leave the town in darkness, during the brief interval necessary for a new service to get functioning? I think not.

It must be considered that the parties to the contract foresaw the possibilities of the present unfortunate juncture when the original franchise was granted. As a practical matter of fairness to both the parties, a court of equity should protect each from the injurious consequences which each must have foreseen as likely to ensue if the strictly legalistic conception of their contractual relationship were rigidly asserted and adhered to. While there is no power in the court to compel the parties to enter into a new contract or to enforce upon either the indefinite continuance of their heretofore existing relations, yet there is a power in the court to make reasonable orders upon either which are calculated to afford protection to the other upon the termination of the franchise, to meet the emergency of a temporary situation which both must have foreseen.

This principle has been applied in behalf of parties situated as is the defendant. For illustration, while it is the law that a public utility has no right lawfully to occupy the streets after the termination of its franchise and must vacate the same upon such termination, yet the municipality will not be permitted to insist upon an immediate ejection. A reasonable time will be afforded to the end that the utility may conduct its withdrawal under circumstances that are calculated to save it from loss and damage which precipitate

ejection would entail. *Cedar Rapids Water Co. v. Cedar Rapids,* 118 *Iowa,* 234, 91 *N. W.* 1081; *Iowa Electric Light & Power Co. v. Grand Junction,* 216 *Iowa,* 1301, 250 *N. W.* 136; *Detroit United Ry. v. Detroit,* 229 *U. S.* 39, 46, 33 *S. Ct.* 697, 57 *L. Ed.* 1056; *City of Roswell v. Mountain States Tel. & Tel. Co.,* (*C. C. A.*) 78 *F.* (2d) 379; *State ex inf. McKittrick ex rel. City of Campbell v. Arkansas-Missouri Power Co.,* 339 *Mo.* 15, 93 *S. W.* (2d) 887.

And so in this case the defendant has an equity not to be subjected to a harsh application of strict right by the complainant. A converse equity must in reason exist in favor of the complainant, especially in view of the great interests of the local public which are entitled to be considered. In *City of Ludlow v. Union Light, Heat & Power Co.,* 231 *Ky.* 813, 22 *S. W.* (2d) 909, the Court of Appeals of Kentucky held that though on an expiration of a franchise a public utility could not be compelled to enter into a new contract, yet in view of the great inconvenience and perhaps hardships to the citizens which an immediate discontinuance of the service would occasion, a court of equity had power by mandatory injunction to compel the utility to continue its service for a reasonable time after termination of the franchise.

The mutual equities of the municipality and of the utility, of the one to insist upon a continuance of the service for a reasonable time after the termination of the contract and of the other to a reasonable extension of time, after the termination of its rights, to discontinue its business and remove its facilities from the streets, arise from a situation which both must have foreseen but failed to provide for. It is a situation in which a court of equity might very properly intervene to the end that the assertion of strict legal rights by either party might temporarily be stayed in the interest of saving the other from immediate loss or inconvenience which otherwise would be entailed.

The defendant cites in opposition to the view herein expressed the following cases: *Union Light, Heat & Power Co. v. Fort Thomas*, 215 *Ky.* 384, 285 *S. W.* 228; *Union Light, Heat & Power Co. v. Railroad Commission*, (*D. C.*) 17 *F.* (2*d*) 143; *Denver v. Denver Union Water Co.*, 246 *U. S.* 178, 38 *S. Ct.* 278, 62 *L. Ed.* 649, and *City of Toledo v. Toledo Rys. & Elec. Co.*, (*C. C. A.*) 259 *F.* 450. I find nothing in those cases, however, at variance with what is herein held. The Kentucky court in a case later than that from 215 *Ky.* 384, 285 *S. W.* 228, which the defendant cites, is an authority for the position taken by the complainant in this case. *City of Ludlow v. Union Light, Heat & Power Co., supra.* At *page* 389 of the case from 215 *Ky.* 384, 285 *S. W.* 228, 230, the following language appears which is entirely harmonious with the *Ludlow Case*:

"Cases may arise where the facts and circumstances would warrant the interposition of courts of equity to prevent discontinuance of gas service to the city even after the expiration of the franchise."

The decree will be framed in accordance with the complainant's suggestions.