BELT LINE RY. CO. v. CITY OF MONTGOMERY et al.

(District Court, M. D. Alabama, N. D. October 3, 1912.)

No. 301.

1. STREET RAILROADS (§ 18*)—GRANT OF FRANCHISE—CONSTRUCTION—LENGTH OF TERM.

A grant of a franchise to a street railroad company to use the streets of a city must be in plain terms, and nothing passes except it be clearly stated or necessarily implied. If it is in any way ambiguous as to the length of the term, it is to be construed strictly against the grantee.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 39–41; Dec. Dig. § 18.*]

2. STREET RAILROADS (§ 18*)—FRANCHISE—CONSTRUCTION OF GRANT—LENGTH OF TERM.

A city enacted an ordinance granting a franchise to certain individuals to construct and operate a street railroad for a term of 20 years. A few months later an amendatory ordinance was passed granting a similar franchise to a corporation which succeeded to the rights of the individuals and providing that all provisions of the original ordinance not contained therein were repealed. This ordinance contained no provision as to the duration of the franchise. Subsequently a third ordinance was passed amending the second by reciting that the corporation named therein was the successor and assignee of the persons named in the original grant, and that it was the intention thereby to confer upon it all of the rights and privileges granted to them by the first ordinance.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Subsequently other ordinances were enacted from time to time granting additional privileges to the company, extending its franchise to other streets, etc., expressly subject to the terms and conditions of the first two ordinances. All of said ordinances were accepted in writing by the grantees. *Held,* that the limitation of the term of the franchise to 20 years contained in the original grant was not repealed by the second ordinance; it being at least doubtful whether such repeal was intended.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 39–41; Dec. Dig. § 18.*]

In Equity.   Suit by the Belt Line Railway Company against the City of Montgomery.   On demurrer to bill.   Demurrer sustained.

The original bill in this cause was filed on June 22, 1911, in the Circuit Court by the Belt Line Railway Company, a corporation organized under the general laws of Alabama on December 6, 1889, against the city of Montgomery, a municipal corporation, and the individuals composing the board of commissioners of said city, and alleged that complainant, as a street railway company, had power conferred upon it to construct, maintain, and operate a street railway line in and over certain streets of the city of Montgomery and to have succession perpetually, and that in pursuance of the powers conferred upon it by its said charter, and in pursuance of the rights and privileges conferred by the city of Montgomery, complainant constructed its tracks, switches, and turnouts over and along the streets of said city, and enjoyed the privileges conferred by the said city for many years.

It was further alleged that prior to the incorporation of complainant, and on March 29, 1889, the city of Montgomery, by an ordinance approved March 30, 1889, granted to F. M. Billing and others the right of way over certain streets of said city upon certain conditions and limitations named in the grant, and authorized them to construct, maintain, and operate a street railway over and along the streets named in the ordinance. Section 2 of the ordinance making the grant provided that the authority granted to Billing and others should cease and determine at the end of 20 years. It was also provided in the ordinance that, before the rights, privileges, and powers granted by it should vest, Billing and his associates should become incorporated under the general laws of Alabama, relating to street railway companies, and that thereupon such rights and privileges should vest in the corporation to be formed.

The bill further alleged that prior to the incorporation of complainant, and by ordinance approved October 4, 1889, copy of which was made an exhibit to the bill, the city of Montgomery granted to the Montgomery Belt Railway Company, a corporation, its successors and assigns, as the successors and assigns of Billing and associates, the right and privilege to construct and operate a street railroad in the city of Montgomery, for the transportation of freight and passengers, along and across certain streets therein named and under the regulations and conditions set forth. This last ordinance, the bill alleges, purported to be amendatory of the ordinance approved March 30, 1889; but the bill alleges the ordinance approved October 4, 1889, was a complete ordinance and a full revision of the subject-matter contained in the ordinance approved March 30, 1889, and was intended to repeal said ordinance. The former ordinance contained the following provision, in section 11 thereof: "That the Montgomery Belt Railway Company shall consent to this ordinance as an amendment to said ordinance of March 29, 1889, and approved March 30, 1889, and accept the same in lieu thereof." Section 13 of the said ordinance contained the following: "Be it further ordained that everything contained in said ordinance of March 29, 1889, and not herein contained, is hereby expressly repealed." Nothing was said in the ordinance of October 4, 1889, which contained section 13, above set out, as to the duration of the franchise. The Belt Railway Company filed its consent and acceptance of the ordinance in writing. Complainant alleges that the ordinance approved March 30, 1889, *including the 20-year limitation therein, was repealed by the ordinance of October 4, 1889.*

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Paragraphs 5 and 6 of the bill, respectively, made exhibits to the bill an ordinance approved July 11, 1890, authorizing the complainant, as the successor of the Montgomery Belt Railway, to construct and operate a switch into certain property; an ordinance approved March 10, 1893, granting to complainant the right to construct and operate its line of road along and across certain streets therein named, for the transportation of freight and passengers, being substantially the same streets over which the city of Montgomery consented that it might construct and operate its line of road as shown in the charter, and the ordinance fixed no period of time during which complainant was to exercise the privileges therein granted and providing that it should not take effect until the Belt Line Railway Company should file its consent in writing, which was done. The ordinance also declared complainant "the sole and lawful successor of the rights theretofore (granted) by the said ordinance of September 30, 1889, which are herein and in the sections of said ordinance other than section 1 contained."

Paragraphs 7 and 8 of the bill make exhibits thereto ordinances of the city of Montgomery approved December 9, 1903, granting complainant the right to make certain changes in its tracks, and the ordinance approved January 18, 1897, empowering and authorizing complainant to put down and operate additional main track. It was alleged in the bill that these ordinances did not contain any limitation upon the right of complainant to exercise the privileges and rights therein contained.

An ordinance adopted by the city council of Montgomery on March 6, 1893, and approved March 10, 1893, is as follows: "Whereas, heretofore, on the 30th day of September, 1889, this council enacted an ordinance relative to the Montgomery Belt Railway Company and its rights to operate a railway in the city of Montgomery by an amendment to a former ordinance granting such right to F. M. Billing, W. F. Joseph, W. F. Vandiver, their associates, successors and assigns; and whereas by the first section of said ordinance, it was intended to grant the said railway company the same right to maintain a line of railroad in the streets and along the line therein described, which had heretofore been granted to the said parties; and whereas, doubts have been expressed concerning the sufficiency of the form of said section; and whereas, the said Montgomery Belt Railway Company has forfeited all right to have any railroad on Bell street and on Tallapoosa street between Goldthwaite and the intersection of Tallapoosa and River streets: Now, therefore, be it ordained by the city council of Montgomery as follows, viz.: That section 1 of said ordinance, adopted September 30, 1889, and approved October 4, 1889, be amended so as to read as follows: Section 1. Be it ordained by the city council of Montgomery that an ordinance of the city council of Montgomery, granting the right of way over the streets of the city to F. M. Billing, W. F. Joseph, W. F. Vandiver, their associates, successors and assigns, for the construction and operation of a street railway, adopted March 29, 1889, and approved March 30, 1889, be, and the same is hereby, amended so as to read as follows: That the Belt Line Railway Company, a corporation chartered and incorporated under and by virtue of the laws of the state of Alabama, its successors or assigns (the said railway company having become and being the assigns and successors of said Billing, Joseph and Vandiver of such of the rights, privileges, powers and franchises granted to and conferred upon said Billing, Joseph and Vandiver, by said ordinances of March 29, 1889, and September 30, 1889, as are herein, and the section of said ordinance of September 30, 1889, other than section 1 of said last-named ordinance granted), are hereby granted the right to construct, operate and maintain a single line or track of street railway in the city of Montgomery for transportation of freight and passengers, either or both, upon the following streets or parts of streets with the right to cross any of said streets or parts of streets, viz.: Beginning at the west side of North Perry street on Columbus street, thence west on Columbus street to and across North Court street, to Tallapoosa street, thence along Tallapoosa street to and along River street, thence along River street with the right to cross Goldthwaite, Whitman, Hanrick, Holt, Dickinson and Bell streets, crossing the last-named street at or near the corporation line, with the right to make a continuous line. The said Belt Line Railway Com-

pany, its successors or assigns, is hereby declared the sole and lawful successor of the rights and franchises heretofore by the said ordinance of September 30, 1889, which are herein and in the sections of said ordinance other than section 1 contained; and said Belt Line Railway Company, its successors or assigns are hereby granted the right to exercise such of the rights, franchises, powers and privileges granted to said Billing, Joseph and Vandiver by said ordinances of March 29, and September 30, 1889, which are herein and in the sections of said ordinance of September 30, 1889, other than section 1 of said ordinance contained, and are authorized to maintain said right according to the terms and provisions of this ordinance and the sections other than section 1 of the said ordinance of September 30, 1889; provided that this ordinance shall not take effect until the consent in writing of the Belt Line Railway Company heretofore has been filed with the city clerk." The complainant accepted the provisions of this ordinance in writing as required.

The ninth paragraph of the bill as amended alleged "that on the 13th day of June, 1911, the board of commissioners of the city of Montgomery, representing the city of Montgomery as a municipality having a population of more than 25,000 and less than 50,000 people, which board is composed of W. A. Gunter, Jr., president, C. P. McIntyre, W. R. Brassell, J. T. Letcher, and E. B. Joseph, acting for said city under supposed authority conferred upon said city and the said board of commissioners by the act of the Legislature of Alabama, approved April 6, 1911 (General Acts Alabama 1911, p. 289 et seq.), and other general laws passed by the Legislature of Alabama conferring power upon municipalities, adopted a resolution. * * *"

"Whereas, an ordinance was approved March 30, 1889, granting the right of way over the streets of the city to F. M. Billing, W. F. Joseph, W. F. Vandiver, their associates, successors and assigns, for the construction and operation of a street railway. And whereas, by section 2 of said ordinance it was provided that the authority granted by said ordinance should cease and determine at the end of twenty years. And whereas, an ordinance was approved Oct. 4, 1889, to amend 'an ordinance of the city of Montgomery' entitled 'An ordinance granting the right of way over the streets of Montgomery to F. M. Billing, W. F. Joseph, W. F. Vandiver, their associates, successors and assigns for the construction and operation of a street railway,' adopted March 29, 1889, and approved March 30, 1889. And whereas, by said amended ordinance the Belt Line Railway Company acquired all the rights, powers, privileges and franchises granted to F. M. Billing, W. F. Joseph, W. F. Vandiver. And whereas, an ordinance was approved July 11, 1890, to authorize the Belt Line Railway Company to construct and operate a switch or turnout from the main line into the property of J. C. Hurter & Co. and the property known as the Alabama Warehouse. And whereas, said Belt Line Railway Company, as successors of the Montgomery Belt Railway Company, acquired by said ordinance the power therein given subject to all the restrictions and limitations of the ordinances approved October 4, 1889, and March 30, 1889. And whereas, an ordinance was approved on March 10, 1893, to amend section 1 of an ordinance entitled 'An ordinance to amend an ordinance of the city of Montgomery' entitled 'An ordinance granting the right of way over the streets of the city to F. M. Billing, W. F. Joseph, W. F. Vandiver, their associates, successors and assigns, for the construction and operation of a street railway,' adopted February 30, 1889, and approved by the mayor October 4, 1889. And whereas, it was expressly declared that the said Belt Line Railway Company, its successors and assigns, were the sole and lawful successor of the rights and franchises granted by the said ordinances of March 29 and September 30, 1889, as are herein, and the sections of said ordinance of September 30, 1889, other than section 1 of said last-named ordinance, and said Belt Line Railway Company, its successors and assigns, were granted the right to exercise the rights, franchises, powers and privileges granted to said Billings, Joseph and Vandiver under said ordinances of March 29 and February 30, 1889. And whereas, an ordinance was approved January 18, 1889, to be entitled 'An ordinance to confer additional powers and privileges upon the Belt Line Railway Company.' And whereas, by section of said ordinance it was expressly declared that such powers, so granted, were subject to the terms, conditions, restrictions, limitations and

requirements set forth and contained in an ordinance adopted on, to wit, the 29th day of March, 1889, granting a right of way over the streets of the city to Billing, Joseph, Vandiver, their associates, successors and assigns. And whereas, an ordinance was approved December 9, 1903, 'to permit the Belt Line Railway Company to remove and change the point at which its bulk track in-. tersects with its main track on Tallapoosa street.' And whereas, said power was granted subject to all the conditions, requirements, limitations and regulations contained in the ordinances under which the said Belt Line Railway Company was then operating and subject to any and all ordinances of the city council of Montgomery, then in existence, or which might thereafter be adopted, regulating the operation of railways over the streets of the city of Montgomery. And whereas, an ordinance was approved December 24, 1903, granting to the Belt Line Railway Company permission to change the location of a 'cross-over' track, the same connecting with main line tracks Nos. 1 and 2 in Tallapoosa street in the city of Montgomery, Ala. And whereas, such power was granted subject to all the conditions, requirements, limitations and regulations contained in the ordinances of the city of Montgomery, then in existence, or which might thereafter be adopted regulating the operation of railways over the streets of Montgomery: Now therefore, it is hereby declared by the board of commissioners of the city of Montgomery, acting for said city of Montgomery; that the franchise granted to the said Belt Line Railway Company expired on March 30, 1909, and that said Belt Line Railway Company have, since that date, been using the streets of the city of Montgomery without any authority therefor. Therefore be it resolved by the board of commissioners of the city of Montgomery, that the said Belt Line Railway Company be, and are hereby, ordered to cease the further operation of said Belt Railway Company and to remove from the streets of the city of Montgomery all its tracks and property of every description, within ten days from the passage of this resolution. Be it further resolved, that the president of the board of commissioners of the city of Montgomery be, and he is hereby, authorized and empowered to see to the enforcement of this resolution and to use the engineering and police departments of said city, for such purpose whenever, in his opinion, it is necessary to do so."

The tenth paragraph of the bill as amended is as follows: "Orator further shows unto your honor that the adoption of the resolution of June 13, 1911, just above referred to, was an attempt on the part of the city of Montgomery and of the board of commissioners of the said city to impair the obligation of the contract which for many years had existed between the city of Montgomery and your orators; and that said resolution is violative of section 10, art. 1, of the Constitution of the United States, which provides that 'no state shall pass a law impairing the obligation of contracts,' and also violates the fourteenth amendment of the Constitution of the United States, in that said resolution purports and attempts to deprive complainant of its property and its property rights without due process of law. Complainant further avers that the said resolution is void and ineffective in that it denies to complainant the equal protection of the laws as guaranteed to it by the fourteenth amendment of the Constitution of the United States. Orator further shows that it expended large sums of money under the rights and privileges granted to it by the city of Montgomery, in the construction of its tracks, along, upon and across the streets of said city, and under the contract between your orator and said city; that the rights and privileges granted by the city of Montgomery were and are valuable; and that the exercise of those rights and privileges are essential to the performance by your orator of those functions, privileges, and rights conferred upon it by its charter; and that if the threats contained in the resolution of June 13, 1911, are permitted to be executed, that the damage to orator will be irreparable. Orator avers that it is not true, as declared in said resolution, that the privileges and franchises granted to it by the city of Montgomery have expired, but, on the contrary, orator avers the fact to be that under the ordinances and acceptances of same, herein set forth and made exhibits to the bill, your orator's right to exercise the privileges and franchises conferred upon it by the city of Montgomery is perpetual. Orator further avers that unless restrained the threats contained in said resolution will be

enforced immediately upon the expiration of the time named in said ordinance and in the manner therein provided for, and the tracks and property of your orator will be forcibly removed from the streets of the said city of Montgomery, resulting thereby in the impairment or destruction of the contractual rights and obligations heretofore created by the ordinances of the said city and the acceptance of the same by your orator and by the Montgomery Belt Railway Company, its predecessor; also resulting in the taking of your orator's property without due process of law or in the denial to it of the equal protection of the laws guaranteed to it by the fourteenth amendment of the Constitution of the United States; and that the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $5,000."

The bill prayed a temporary restraining order enjoining and restraining the respondents, their agents or servants, from putting into effect the resolution of June 13, 1911 (which was granted upon the execution of bond by complainant), and that upon final hearing a decree be made declaring complainant's rights and privileges over the streets of Montgomery to be perpetual, and perpetually enjoining and restraining the said respondents from putting into effect the resolution complained of, or otherwise interfering with the property of complainant and for general relief.

Respondents filed motions to dissolve the temporary restraining order and to dismiss the bill upon the following grounds: "First, for that there is no equity in said bill. Second, for that by the allegations of said bill it is shown that the franchise granted to the complainant by the city of Montgomery expired on, to wit, the 30th day of March, 1909." Later the bill was demurred to on the same grounds. The demurrers having been sustained, and complainant declining to amend or plead over, the bill was dismissed.

John R. Tyson, of Montgomery, Ala. (Steiner, Crum & Weil, of Montgomery, and W. E. Kay, of Jacksonville, Fla., on the brief), for complainant.

John V. Smith, City Atty., of Montgomery, Ala. (Wm. A. Gunter, of Montgomery, Ala., on the brief), for respondents.

JONES, District Judge (after stating the facts as above). The real issue is whether or not the limitation of the franchise to 20 years, in the original ordinance adopted March 29, 1889, was repealed by subsequent ordinances. Respondents admit, if that ordinance has been repealed, complainant is entitled to the relief prayed in the bill.

[1] In Blair v. City of Chicago, 201 U. S. 400, 26 Sup. Ct. 427, 50 L. Ed. 801, it is held that one asserting private rights in public property under grants of franchises must show that they have been conferred in plain terms; for nothing passes by a grant except it be clearly stated or necessarily implied. Legislative grants of franchises which are in any way ambiguous, as to whether granted for a longer or shorter period, are to be construed strictly against the grantee.

In Cleveland Electric Railway v. Cleveland, 204 U. S. 129, 27 Sup. Ct. 207, 51 L. Ed. 399, it is said:

"The rules of construction which have been adopted by the courts in cases of public grants" (of the use of the streets) "by the authorities of cities are of long standing. It has been held that such grants should be in plain language, that they should be certain and definite in their nature, and should contain no ambiguity in their terms. The legislative mind must be distinctly impressed with the unequivocal form of expression contained in the grant 'in order that the privileges may be intentionally granted or purposely withheld. It is matter of common knowledge that grants of this character are usually prepared by those interested in them, and submitted to the Legislatures with a

view to obtain from such bodies the most liberal grant of privileges which they are willing to give.'"

In Pennsylvania Railroad Co. v. Canal Commissioners, 21 Pa. 9, it is said:

"The rule of construction in cases of this description is this: That any ambiguity in the terms of the grant must operate against the corporation, and in favor of the public. * * * If, on a fair reading of the instrument, reasonable doubt arises as to the interpretation to be given to it, those doubts are to be solved in favor of the state; and, where it is susceptible of two meanings, the one restricting and the other extending the powers of the corporation, that construction is to be adopted which works the least harm to the state."

In Slidell v. Grandjean, 111 U. S. 412, 4 Sup. Ct. 475, 28 L. Ed. 321, this is declared a wise doctrine:

"It serves to defeat any purpose concealed by the skillful use of terms to accomplish something not apparent on the face of the act, and thus sanctions only open dealings with legislative bodies."

The same doctrine is upheld in numerous other authorities. See Louisville Trust Co. v. City of Cincinnati, 76 Fed. 296, 22 C. C. A. 334.

[2] After a careful consideration of the ordinances passed subsequently to the original grant, which was for a limited period only, and the wording of the ordinances, which it is insisted repeal the limitation in the original grant, bearing in mind that such a result if intended could have been better accomplished by a few simple, direct words, obviating the necessity for the elaborate circumlocution employed, and the reasons given in the preambles of the several ordinances why further legislation regarding the original grant was necessary, I am doubtful, to say the very least of it, whether those who voted for the subsequent ordinances were put on notice, by the language employed, of any lurking intent in the subsequent legislation to repeal the limitation contained in the original grant, or intended, or desired by voting for the subsequent ordinances, to effect a grant of the franchise beyond the term fixed in the original ordinance, or that the subsequent ordinances had that effect. Under all the authorities, under such circumstances, the doubt must be resolved in favor of the city, and I must hold that the resolution directing the complainant to remove its tracks and cease the use of the streets is a proper exercise of authority by the commission and that complainant has no right to complain of its enforcement.

There must be a decree discharging the temporary restraining order, denying a preliminary injunction, and dismissing the bill. If the complainant desires to appeal, it may have a supersedeas upon giving bond in a sum to be agreed upon by counsel or fixed by the court. Counsel may prepare and present a decree in conformity with this opinion.