THE CITY OF MT. VERNON v. BERMAN ET AL.

*Street railways — Abandonment of line and removal of tracks —*
*Duty to restore street — Bond may be required, when.* '

Where a traction company voluntarily abandons the privileges
granted to it by a municipal franchise, bond may be required
securing the city that its streets will be left in as good condi-
tion as before the ties and rails were removed.

(Decided June 22, 1918.)

APPEAL: Court of Appeals for Knox county.

*Mr. Harry W. Koons* and *Mr. L. C. Stillwell,*
for plaintiff.
*Mr. Robert L. Carr,* for defendants.

POWELL, J. This is an action for injunction and
is 'in this court on appeal from the judgment of the
court of common pleas of Knox county. The de-
fendants are the purchasers of the property of the
Mt. Vernon Railway Company, a corporation,
whose franchise had been forfeited and whose prop-
erty was sold under an order of the court of com-
mon pleas at receiver's sale. A large part of the
property so sold consists of a line of railway track
on several of the streets of the city of Mt. Vernon
for. the operation of a trolley system of car lines in
said city. Some parts of the property so sold have
been removed. Such parts of the railroad tracks
as could not be removed without injury to the
streets on which they are located are still in place
where located when said track was last laid. The
suit is to prevent the removal of these parts of the

track until a bond or other security is given conditioned that defendants will relay the paving that will necessarily be torn up in removing the rails from the streets. There is no question of ownership. It is conceded that the rails belonged to the railway company whose property was sold at receiver's sale and that the title to the property passed by such sale to the defendants in this action, who were the purchasers of the same, but subject to any rights or liens that plaintiff might have under the terms of the franchise. Plaintiff claims some such right, which is being worked out in another proceeding in the court of common pleas. In 1907 the city of Mt. Vernon granted a franchise to the railway company for a period of twenty-five years. The ordinance granting the same is a part of the agreed statement of facts on which the case was tried in the court below and on which, in part, the same is tried in this court. All the rights of the parties are to be found in said ordinance and in proceedings had since its passage. The ordinance granting the franchise constitutes a contract when its terms have been accepted by the party to whom such franchise is granted. As is true of every contract, "the rights of the parties are defined by the contract itself." There is no question made as to the validity of the ordinance. It is conceded that it was regularly passed and that all the rights of all the parties to the same are found or merged in the ordinance as it now exists. The contention of the parties grows out of what is claimed to be an implied obligation on the part of defendants to relay the pavement on the streets along the lines of track after the rails have been taken up and removed.

This implied obligation is denied by defendants. There is no averment in the petition that the defendants, or either of them, are insolvent, either at the present time, or prospectively. Nor is there any other ground alleged in the petition which entitles plaintiff to an injunction as prayed for. The ordinance passed by the city February 11, 1918, after said sale had been made, does not affect the rights of the parties in any particular, nor is it sufficient to sustain an injunction, as is asked for by the plaintiff in this action.

A majority of the court is of the opinion that the rights of the parties hereto are contractual and are determined by the provisions of the franchise ordinance, either by express provisions, or under such implied obligations arising thereon as may be necessary to carry out the purposes for which the contract was made. The ordinance is entirely silent as to the removal of the rails and the other property of the railway company, or its successors in title, either at the termination of the franchise or at the forfeiture of its franchise rights. It is a rule of law in this state that:

"While much regard will be given to the clear intention of the parties, yet where the contract is entirely silent as to a particular matter, the courts will exercise great caution not to include in the contract, by construction, something which was intended to be excluded." *East Ohio Gas Company* v. *City of Akron,* 81 Ohio St., 33.

It is further held in the same case, that, where a franchise is not perpetual but indeterminate, the incorporated company may voluntarily forfeit its right to exercise its privileges within the munic-

ipality and wholly withdraw therefrom. "But in such case the municipality has no right to prevent the incorporated company from removing its property, nor to take possession of and make use of the same * * * without due process of law."

We think these rules are applicable in the case under consideration. The rights of the parties are contractual and are fixed and determined by the contract itself. The plaintiff is without right to prevent the defendants from removing their property, provided the same is done with as little damage to the streets of the city as possible. The duty of keeping its streets in repair is upon the city by statute and there is nothing shown in this record that transfers such duty from the city to the defendants. And the presumption arises that the matter of removal of the property of the defendants, when such removal becomes necessary, was considered and taken into account at the time of the passage of such franchise ordinance.

It follows that defendants are entitled to a judgment in their favor as prayed for in their answer and cross-petition.

*Decree for defendants.*

HUGHES, J., of the Third Appellate District, sitting in place of HOUCK, J., concurs.

SHIELDS, J., dissenting. I can not concur in the conclusion reached herein by my associates, and the importance of the case leads me to place the grounds of my dissent on record.

As indicated in the majority opinion, the controlling, if not the sole, question presented for de·

termination by the record is: Can a street railway corporation obtain a franchise from the council of a municipality to operate its cars upon the improved streets of such municipality for a stated period, and after laying its tracks on such streets and operating its cars thereon for several years and finding it to be an unprofitable business enterprise, cause the property of such corporation, before the expiration of such period, to be placed in the hands of a receiver and sold to private parties who, to recover possession of the same, undertake to tear up such streets by removing the ties between the brick and the tracks laid thereon, thereby leaving said streets full of holes and rendering the same practically unfit and unsafe for public travel? Can such property be so removed without first requiring said parties to give bond to restore said streets to their former condition of usefulness?

That the ordinance passed by the council of the city of Mt. Vernon became a contract upon its acceptance by the railway company is not open to question. That its successor acquired no more rights than the original grantee is equally true, and, as I view it, whatever rights the city has in this action are referable to the contract originally made with said railway company. Change of ownership by title acquired at judicial sale in no wise affects the terms of such contract.

It appears that the franchise was originally granted to the Mt. Vernon Electric Railway Company, which afterward transferred its title and interest in the same to the Mt. Vernon Railway & Light Company, which company afterward became embarrassed and its property was sold as stated.

The contract was for the full term of twenty-five years. The injunction below, as shown to this court on the hearing, prevented the defendants from removing any portion of the ties and rails laid on the streets in question, and none have been removed. Whatever the fact may be in this respect, the defendants claim the right to remove them and the judgment of this court is that they have such right, the court holding that "the rights of the parties hereto are contractual and are determined by the provisions of the franchise ordinance, either by express provisions, or under such implied obligations arising thereon as may be necessary to carry out the purposes for which the contract was made."

This holding rests upon the rule of law laid down by the supreme court in the case of *East Ohio Gas Co.* v. *City of Akron,* 81 Ohio St., 33, which in substance is a reassertion of the rule announced in the case of *Cleveland Elec. Ry. Co.* v. *City of Cleveland et al.,* 204 U. S., 116. In neither of these cases, however, is the question raised or determined as to the manner in which the owning company may take possession of its property at the termination of the franchise period. In the gas company case it is held:

"The incorporated company may therefore voluntarily forfeit its right to exercise its privileges within the municipality and wholly withdraw therefrom; but in such case the municipality has no right to prevent the incorporated company from removing its property, nor to take possession of and make use of the same, nor to grant the right to use

the same to another company, without due process of law."

True it is held in that case that the gas company has the right to remove its gas mains laid in the alleys and streets, but it is silent as to the method or manner of removing them. Does it mean that it may dig up the alleys and streets to such a depth as gas mains are usually laid in the ground and after removing its gas mains leave the alleys and streets exposed and unprotected, for the city to repair in a passable and safe condition for public use and travel? Or does it mean that it may remove its gas mains by restoring the alleys and streets to the same condition they were in before such removal? It would seem that the right to place its gas mains in the ground carried with it the obligation to replace and restore it as before. Under the statute authorizing a railway company to cross a public highway or street it is required that such railway put such highway or street in such condition as not to impair its former usefulness. *(State, ex rel.,* v. *Dayton & Southeastern Rd. Co.,* 36 Ohio St., 434.) And in *Little Miami Rd. Co.* v. *Commissioners,* 31 Ohio St., 338, which was also a railroad-crossing case, Judge Boynton, in announcing the opinion, says at page 346 that "the duty to restore is correlative with the right to intersect or cross." And in the case at bar the right to enjoy the use of the streets imposed the obligation to keep them unobstructed and in repair. While in the cases cited the express provision of the statute forms part of the charter of the railroad company, so here the ordinance granting the franchise contains the express provision with reference

to repairs. The ordinance clearly contemplates that the continued use of the streets for public travel should not be interfered with by the construction of this street railway thereon, except such as was necessarily incident to the operation of its cars. Any further grant of power was not delegated to the municipality to exercise. The council acted simply as trustees for the public, and its powers were clearly defined by law.

Unlike an ordinary contract between individuals, where the contracting parties are privileged to agree to do or not to do certain things, here the contract entered into by the council of the city of Mt. Vernon with the railway company was of a public character. *It concerned the public and was impressed with legislation of a public character.* It affected the property interests of every abutting property owner on the streets on which the tracks of the railway company were and are laid, covering as they do the principal business and residential portions of the city, and it likewise involved the observance of the statutory regulation that the streets of the city were to be kept open and free from nuisance, notice of which the railway company was chargeable with when it accepted the ordinance.

In the majority opinion herein it is said "the plaintiff is without right to prevent the defendants from removing their property, provided the same is done with as little damage to the streets of the city as possible."

That the defendants have the right to remove this property is conceded, but the generosity of my associates would limit the exercise of such right to

the condition that it be done "with as little damage
to the streets of the city as possible." It is unnec-
essary to remark that such work would scarcely be
done with scrupulous regard for the interests of
the city, especially by non-residents of the city.

The majority opinion further says:

"The duty of keeping its streets in repair is upon
the city by statute and there is nothing shown in
this record that transfers such duty from the city
to the defendants. And the presumption arises
that the matter of removal of the property of the
defendants, when such removal becomes necessary,
was considered and taken into account at the time
of the passage of such franchise ordinance."

As before stated, the controversy here, in my
judgment, arises out of a construction of the con-
tract between the city and the railway company and
not between the city and the purchasers of this
property. But assuming that it is as claimed by my
associates, would not the statutory obligation upon
the part of the city to keep its streets unobstructed
and free from nuisance remain the same? There
can be no transfer of this obligation under the law.
It is fixed by statute and is beyond the domain of
private contract. Hence, the condition of the rec-
ord in this respect, whatever it may be, is wholly
immaterial and irrelevant.

As to the presumption following the action of
the council, that the removal of the tracks might
become necessary at the expiration of the franchise
period, it is enough to say that the presumption was
then as now that the introduction of an electric rail-
way in a city like Mt. Vernon signalized progress
and advancement, that it was natural to expect that

it had come to stay, and that the owning company would not become defunct after half the life of the franchise period had expired. But whatever was then in the mind of the council in this respect, I am of the opinion that there is an implied obligation, both moral and legal, resting upon this railway company, and upon those acquiring its property by purchase or otherwise, to protect the city, and through it the interests of the property owners on these streets, against a ruthless invasion of their property rights, and that defendants should be required to give bond for the restoration of the streets to good condition, as prayed for, before the work of dismantling the same is commenced. If the suggestion made in the majority opinion be followed, the inquiry naturally arises: What would the consequences be of allowing the defendants to go forward and tear up these streets at their will, leaving them full of holes, impassable to public travel, and even dangerous to life and limb, as they necessarily would be? What relief would be afforded to each abutting property owner in front of whose property there would be created a standing nuisance, especially in times of rain, when the excavations made in the street by the removal of this property would accommodate the accumulation of water? And what would be the extent of the liability of the city in damages for injuries that might be sustained by reason of these exposed and unprotected streets, not to mention its liability under a criminal prosecution for maintaining what would be equivalent to a public nuisance? Is the law powerless to afford relief by injunction against this condition of things? The answer is that courts

of equity are provided to prevent the consummation of threatened wrongs, and the equitable remedy pointed out is by injunction. Parties are not relegated to the slow procedure of courts of law to work out their rights under the circumstances described. In 1 High on Injunctions (4 ed.), Section 580, it is laid down:

"Where the legal remedy is plainly insufficient to meet the requirements of the case and to avert the threatened injury, equity will not compel the person aggrieved to await the tardy action of the ordinary tribunals."

Nor are parties obliged to wait until the wrong is done, but they may avail themselves of the power that inheres in a court of equity to stay the hand of the wrongdoer and prevent the perpetration of threatened irreparable injury. As is laid down in 1 High on Injunctions, Section 18:

"The remedy by interlocutory injunction being preventive in its nature, it is not necessary that a wrong should have been actually committed before a court of equity will interfere, since if this were required it would in most cases defeat the very purpose for which the relief is sought by allowing the commission of the act which complainant seeks to restrain. And satisfactory proof that defendants threaten the commission of a wrong which is within their power is sufficient ground to justify the relief."

Of course this is upon the assumption that the petition here and the amendment thereto contain a sufficient statement of the essential ultimate facts entitling the plaintiff to equitable relief, all of which I think duly appears; but it is to be observed that

my associates hold that "there is no averment in the petition that the defendants, or either of them, are insolvent, either at the present time or prospectively. Nor is there any other ground alleged in the petition which entitles plaintiff to an injunction as prayed for. The ordinance passed by the city February 11, 1918, after said sale had been made, does not affect the rights of the parties in any particular."

If the position heretofore assumed is correct, namely, that the purchasers of this property are not relieved of the obligation claimed to be resting upon the original grantee of this franchise, then the want of an averment of the insolvency of the defendants is immaterial; otherwise it might be. Irrespective of this, insolvency alone in the face of this record should not defeat the relief asked for. In 1 High on Injunctions, Section 18, it is said:

"Upon the question whether the mere insolvency of the defendant, unaccompanied by any other circumstances, is sufficient to justify relief by injunction, the authorities are conflicting. Although there are frequent intimations by the courts that mere insolvency is sufficient ground for equitable interference, yet the weight of the actual adjudications upon the question is clearly to the effect that the mere inability of the defendant to respond in damages at law, although it may properly be taken into consideration upon an application for the extraordinary aid of equity by injunction, does not of itself constitute sufficient foundation for the relief."

Counsel in their argument for the defendants contended that "the petition does not state a cause of action warranting the issuing of an injunction

and the facts not only show that it is not entitled to such relief, but to the contrary, that it is not entitled to this relief."

In 1 High on Injunctions, Section 30, it is laid down:

"The mere existence, however, of a remedy at law is not in itself sufficient ground for refusing relief in equity by injunction; nor does the existence or non-existence of a remedy at law afford a test as to the right to relief in equity. To deprive a plaintiff of the aid of equity by injunction it must also appear that the remedy at law is plain and adequate; in other words, that it is as practical and efficient to secure the ends of justice and its proper and prompt administration as is the remedy in equity. And unless this is shown a court of equity may lend its extraordinary aid by injunction, notwithstanding the existence of a remedy at law."

It is apparent that the cost of restoring these streets to their former condition of usefulness, including the elements of repair and damage and the interruption to public travel, is so indefinite and uncertain as to place it beyond the possibility of any reasonable computation in damages, thus showing that a remedy at law is not adequate to afford proper relief.

My associates quote from the opinion in the *Gas Company case,* above cited, as follows:

"While much regard will be given to the clear intention of the parties, yet where the contract is entirely silent as to a particular matter, the courts will exercise great caution not to include in the contract, by construction, something which was intended to be excluded."

As an abstract proposition of law the foregoing is correct. While it is not the office of courts to read into contracts "something which was intended to be excluded," courts will not hesitate to take notice of that which was clearly intended by the terms of a contract to conserve public interests and protect public property from being destroyed, and, further, courts will not hesitate to enjoin the perpetration of a public wrong sought to be committed under the guise of a specious pretext of pursuing individual rights.

While I think that the equities of this case are with the city, and that the relief prayed for should be granted on the grounds and for the reasons stated, there is an additional reason that might well be urged why such relief should be granted, and that is that the indefiniteness and uncertainty of the provisions of the contract in question are such that they should be construed and resolved in favor of the city as against the defendants, under favor of the recent holding of the supreme court in the case of *Cleveland Ry. Co.* v. *City of Cleveland,* 97 Ohio St., 122, wherein it was held:

"The Constitution of Ohio provides that all private property shall be 'subservient to the public welfare.' By virtue thereof, where a private person or corporation enters into a contract with the public and such contract is of doubtful or uncertain meaning as to any of its provisions, that construction should be adopted that is most favorable and advantageous to the public interest and general welfare."