Johnson, J.
The constitutionality of the provisions of Sections 3812-2 and 3812-3, General Code, passed April 17, 1919 (108 O. L., pt. 1, 215), in so far as they authorize a municipality to renew, replace, repair or reconstruct rails, ties, roadbed or tracks of a street railway company, with money raised by the sale of the bonds of the municipality, is here involved.
Section 6, Article VIII of the Constitution, contains the following: “No laws shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise, to become a *347 stockholder in any joint stock company, corporation or association whatever; or to raise money for, or to loan its credit to, or in aid of, any such company, corporation, or association.”
This constitutional provision was adopted by the people after painful and expensive experiences. Prior to its adoption disastrous results had followed the investment of public money and credit in enterprises which were vainly supposed to be of benefit to the public. In the light of these experiences it was the deliberate judgment of the people that such aid to private or quasi-public enterprises was unwise and must stop.
This constitutional provision has been under consideration by this court in a number of cases and the court has been constantly impressed with its duty tp steadfastly enforce its letter and spirit.
In Taylor v. Commissioners of Ross County, 23 Ohio St., 22, which involved the validity of a statute providing for the levy of a certain amount to be used in the construction of a part of a railroad, it is said at page 83: “The extent of such aid can make no difference. The mandate of the constitution, is that such aids shall never be authorized. Whatever is furnished must be exacted by taxation; and whether the amount be- large or small, to recognize the authority under which it is sought to be imposed would be to deny the protection guarantied by the constitution to every taxpayer.”
In Alter v. City of Cincinnati et al., 56 Ohio St., 47, it is held: “A city must be the sole proprietor of property in which it invests its public funds, and *348 it cannot unite its property with the property of individuals or corporations, so that when united, both together form one property.”
The United States supreme court had our constitutional provision before it in Pleasant Township v. Aetna Life Ins. Co., 138 U. S., 67, and accentuated its binding and salutary effect. It is there said at page 74: “The significance of its inhibition is read in the evil which it was intended to remedy. Common was the practice, theretofore, of issuing municipal bonds to aid in the construction of railroads. * * * So, when the people by their constitution prohibited public aid to private corporations, obviously the thought was that all public assistance to the building of railroads was prohibited.”
This provision was recently under examination here in State, ex rel. Campbell, Pros. Atty., v. Cincinnati Street Railway Co. et al., 97 Ohio St., 283, where we examined the genesis of the constitutional provision and the decisions of this court in cases in which it' was involved. We there pointed out the purpose of the people to preserve the public funds from investment in the hazards of enterprises promoted by private or quasi-public bodies.
When the street railway company in this- case secured the franchise which conferred upon it the right to construct its railroad in the street and operate it for the length of time named in the franchise, it secured property rights which cannot be taken away from it without due process of law.
In Cleveland Electric Ry. Co. v. Cleveland et al., 204 U. S., 116, it is held that in the absence of any *349 provision to that effect in the original franchise the city granting a franchise to a street railway company cannot on the expiration of the franchise take possession of the rails, poles and operating appliances. They are property belonging to the original owner,. and an ordinance granting that property to another company, on payment to the owner of a sum to be adjudicated as its value, is void as depriving the owner of its property without due process of law.
. The statute involved in the case at bar plainly and explicitly recognizes the property right of the street railway company. When the city issues and sells its bonds and uses the money of the taxpayers for renewing, replacing and reconstructing the rails, ties, roadbeds and tracks in the street, all of this new construction and new property belongs to the company, to be used and dealt with in every way that it can use and deal with any of its property. The only way provided by which the city is to be reimbursed is by assessing against the company the cost of the things it gives to and does, for the company, in addition to the declaration of the statute that the amount of the cost shall be a lien on the property of the company. That is to say, it is a simple, plain loan by the city to the company of the amount of money needed for the purpose. The company becomes indebted to the city for the money the city has spent on the company’s property. The company gets the property at once. It may borrow on it or sell it. The city has loaned its money and its credit to the company. It is the yery thing that the constitution prohibits. The fact *350 that under the statute the city is to have a lien on all the property of the company to secure the amount only emphasizes the fact that it is a loan and that the lien is made to secure the loan. The people by their constitutional amendment denied to all the governmental subdivisions of the state the power to do just that thing; and even if it could be claimed, or if the statute -contained some provision, which it does not, that the new rails, ties and construction would belong to the city, it would be equally obnoxious to the constitutional provision, because, as pointed out, all of the decisions of this court have emphasized the requirement, as stated in Alter v. City of Cincinnati, supra, “A city must be the sole proprietor of property in which it invests its public funds, and it cannot unite its property with the property of individuals or corporations, so that when united, both together form one property.”
In this case there is the additional fact that the statute contains a proviso that the company shall not be liable for the installment or installments of the assessments due after the expiration of the company’s or companies’ franchise, unless the use of the track or tracks is continued thereafter by said company or companies. This limits the security which the city has for the repayment of the money which it may expend for and loan to the company. Under this provision, the municipalities of Ohio would incur numerous and forbidden risks. Renewals of expiring franchises could be demanded on harsh terms against the people on the alternative *351 of being compelled to lose the amounts due to the city on defaulted installments.
Nor is the case similar to those in which assessments are made for the payment of public improvements made by public bodies. The instances cited accentuate the infirmity of the statute before us. For instance, a city improves a street by paving the surface and assessing a certain percentage of the cost upon abutting property owners. It is manifest that the thing done by the city with the city’s money is to construct a thing which the city owns and controls for the people. The assessment against the abutting property owner is valid to the extent that the abutting property receives a special benefit different from the benefit that the public at large receives, and therefore the abutting owner pays to the city his portion towards the expense of the construction of the public property, not of the abutting owner’s property.
But it is sought to find justification for the taking of the public money under the statute involved here by the contention that it is an exercise of the police power. A number of cases are cited in the briefs upholding the power of a municipality to require a railroad company to pave the space between its tracks and for a certain distance on either side. This is, of course, necessary to the proper exercise by the municipality of its authority and duty to keep its streets open and in good repair, and in such case the city on default of the company may build its street itself and recover the cost from the company. It is always the city’s street, built for the city and its people. That is a very different *352 thing from building a new railroad for the company, which shall be the company’s property when completed; and it is significant that none' of the cases cited supports the view that in the exercise of the police power the state may raise money by taxing its citizens and expend or give it to private persons or companies, or that it may disregard the express limitations of the constitution. The city must pay the bonds whether the company pays the money back to the city or not. Taxation to pay the bonds is not taxation for the city’s legitimate purpose. . ■ ■
The police power is of course an attribute of sovereignty. Whatever measures are reasonably necessary to advance the peace, safety, morals and best interests of the public may be adopted under it. As stated by Judge Scott, in C., H. & D. Rd. Co. v. Sullivan, Treas., 32 Ohio St., 152, at page 158 of the opinion: “In our system of government, the power to establish police regulations has been left with' the state governments, and may be exercised by their legislatures, according to their judgment and discretion, in any manner not inconsistent with, or repugnant to, the federal or respective state constitutions.”
In Leonard, Jr., v. State, 100 Ohio St., 456, the proposition is stated thus in the syllabus: “The measure of police power available to the government is the measure of public need, whether it apply to health, safety, protection or general welfare, except as qualified by state and federal constitution.” And the same proposition is laid down in State Board of Health v. City of Greenville, 86 *353 Ohio St., 1, and in many other cases not necessary to cite.
It is earnestly urged, in support of the legislation here under examination, that it was passed in response to public necessities which have grown up out of the emergencies of existing conditions in the country. But, as we said in State, ex rel. Campbell, v. Cincinnati Street Ry. Co., supra, the office of a judge is jus dicere non jus dare. The duty of the court is to uphold the constitution, even if that act shall temporarily operate to the hindrance of some beneficial result. The people adopted this very provision for the purpose of providing for themselves a safeguard against themselves. The language of the constitution is: “No laws shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise.” A different conclusion from what we have indicated would open the door for dangerous evasions of constitutional restrictions. The principle upon which such a decision would necessarily rest would be laid hold of for the purpose of forwarding all sorts of enterprises of a similar character, in which public aid is desired.
As said by Chief Justice Marshall, in Marbury v. Madison, 1 Cranch, 137, at page 177: “The constitution is either a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it. If the former part of the alternative be true, then a legislative act contrary to the constitution is *354 not law; if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable.”
For these reasons the judgment of the court of appeals will be affirmed.

Judgment affirmed.

Nichols, C. J., Jones, Matthias, Wanamaker and Robinson JJ., concur.