MARTIN RYERSON, CHAS. T. HILLS, HENRY H. GETTY AND MARTIN A. RYERSON v. TOWNSHIP OF LAKETON.

*Highway taxes.*

Where a township board votes a highway money tax upon the town property in addition to the labor rate the supervisor must levy it upon all the property in the township, including that of any incorporated village within its boundaries. How. St. ch. 29.

2. The right to work out a highway tax in labor is superseded by a vote of the township electors residing outside of an incorporated village that the tax shall be paid in money. But this does not affect the village, whose inhabitants shall then maintain their own roads by a tax on their own property while the people of the rest of the township maintain their roads by a tax on theirs. How. St. §§ 1354,1356.

3. Where the township board imposes a highway tax they represent the town meeting in doing so, and are confined to the same subjects of taxation.

4. A highway tax cannot be imposed without express warrant of law; and it will be illegal if the mode of levy and collection prescribed by statute is not followed and the tax levied upon the property specified.

Error to Muskegon.   (Russell, J.)   Jan. 23.—Jan. 29.

ASSUMPSIT.   Defendant brings error.   Affirmed.

*A. B. Allen* and *Cook, DeLong & Fellows* for appellant. A municipal corporation that has authority over its streets, alleys and bridges is not subject to the interference of the township or county or of the general law in regard thereto: *Merrill v. Kalamazoo* 35 Mich. 212 ; *Cross v. Morristown* 18 N. J. Eq. 305 ; *State v. Morristown* 33 N. J Law 57 ; *State v. Jones* 18 Tex. 874 ; *Indianapolis v. Crous* 7 Ind. 9 ; *Lafayette v. Jenners* 10 Ind. 74 ; *Cowan's case* 1 Overton 311 ; *Pope v. Commissioners* 12 Rich. 407 ; *Fox v. Rockford* 38 Ill. 451 ; *O'Kane v. Treat* 25 Ill. 567 ; *Ottawa v. Walker* 21 Ill. 605 ; *McCullom v. Blackhawk County* 21 Ia. 409 ; Dillon Mun. Corp. §§ 534–5.

*Smith, Nims, Hoyt & Erwin* for appellees.

CHAMPLIN, J.   At the annual township meeting of the town of Laketon, Muskegon county, Michigan, in the spring of 1882, there was no vote taken upon the amount of "money tax" to be assessed for improvements necessary to be made in the highways and bridges during the year, and thereupon on the 21st day of July, 1882, the township board took action in the matter, as appears from the record of the proceedings of the board, as follows :

" At a special meeting of the township board of the township of Laketon, Muskegon county, Michigan, held at the office of the supervisor, pursuant to notice, on the 21st day of July, A. D. 1882, it was moved by N. L. Downie and seconded by Justice Mallock, that a tax of two-fifths of one per cent. be levied upon the taxable property of the township of Laketon, for highway purposes. Motion being put by the chairman and voted upon was declared carried."

The village of North Muskegon is incorporated under the general law for the incorporation of villages, and is located within the corporate limits of the township of Laketon. In 1882 it had an assessed valuation on the township roll of $359,775; and the township of Laketon, outside of the village limits, had an assessed valuation of $135,370. When the supervisor came to spread the highway "money tax" upon the assessment roll, he laid the entire amount upon the taxable property outside of the village. Plaintiffs owned property outside of the village in the township of Laketon, and the amount of highway tax assessed against them was $214.43; whereas, if it had been spread ratably on the whole township, including the village, they would only have been assessed $58.60. Plaintiffs paid the whole tax to the township treasurer under the following written protest:

"To the treasurer of the township of Laketon, Muskegon county, State of Michigan: Now come the undersigned and protests, and here pay under protest, the highway taxes assessed against them for personal assessment, and upon assessment against them upon Lots 2 and 3 of Section 21, town 10 N., R. 17 west; lot 4 of said Sec. same town and range; the mill dock and boom.

The west ½ of lot 1, same Sec., town and range,—all upon the said township treasurer's roll for the collection of taxes for the year 1882.

Because no part or portion of the highway taxes levied and spread upon said tax-roll for said year were levied upon the taxable property of that portion of said township which is embraced within the corporate limits of the village of North Muskegon.

Because said highway tax was not levied as it should by law have been, upon all the taxable property of said township;

And because the taxable property, real and personal, in

that part of said township which is embraced within the corporate limits of the village of North Muskegon, was not upon said tax-roll assessed, levied and charged with its proper proportion of said highway taxes;

And because said taxes were levied upon said tax-roll contrary to the statute in such case made and provided.

*Laketon, December* 30th, '82.　RYERSON, HILLS & Co."

—and then brought this action in assumpsit to recover back the surplus over the $58.60.

The judge charged the jury that "the law of this State required the amount of money tax that should be levied for the improvement necessary to be made in the highways and bridges during the year beyond what the estimated highway labor would accomplish, should be assessed against the entire taxable property of the township;" and that plaintiffs were entitled to recover the difference between what they paid under protest and the amount they would have been required to pay had the assessment been laid against the entire taxable property of the township.

The law governing the case is not clear, nor its proper construction free from difficulty.　Section 4 of chap. ii of Act 243 of 1881, as amended by Act 10 of 1882, reads:

"In case the electors present at any annual township meeting shall neglect or refuse to vote any rate of highway labor to be assessed, as by the first subdivision of the last preceding section provided, the commissioner, in making his assessment, may assess not exceeding one-half day's labor upon each one hundred dollars of valuation; *and in case* such electors shall neglect or refuse to vote a money tax, as by the second subdivision of the preceding section provided, the township board may order to be levied such sum, within the limit herein above provided, as they may deem necessary, for the improvement of roads and bridges; and a certified copy of the record of the proceedings of the township meeting, township board, and highway commissioner respecting the assessment of such highway labor and highway tax shall be delivered by the township clerk to the supervisor of his township, on or before the first day of October in each year.　The amount of such labor, estimating the same at the rate of one dollar for each day, and also the other highway taxes, shall be levied and assessed by the supervisor

upon the township assessment roll for the current year, and shall be collected in the same manner as moneys appropriated for general township purposes. The taxes so levied shall be carried out in the assessment roll as highway taxes. The township treasurer shall keep a separate account of the same as the highway fund." [How. St. § 1328.]

Section 1 of chap. iv provides:

"The qualified electors of any township of this State who do not reside in any incorporated village may, by a majority vote of those voting, determine that the highway tax shall be assessed on a money basis, and paid in money instead of in labor as is provided by chapters two and three of this Act. [How. St. § 1354.] .

And section 3 of the same chapter provides that such tax "shall be levied and collected in the same manner as moneys for general township purposes are levied and collected, but no part of such tax shall be levied on property within the limits of incorporated villages." [How. St. § 1356.]

The statute above quoted shows that there are two methods provided by which moneys for highway purposes can be raised. Under chapter ii of the Act the highways are to be kept in repair by highway labor; and if that is not deemed sufficient for the purpose, then by money tax in addition; the amount of both money tax and labor to be assessed is primarily to be determined, within the prescribed limits, by the electors at the annual township meeting. The money tax so voted is to be levied and collected in the same manner as other township expenses. Chapter iv of the Act dispenses entirely with the labor assessment, and provides that the highways and bridges shall be kept in repair by a money tax. When this plan is adopted it supplants the other method. In cases where an incorporated village is situated within the bounds of the township, this method contemplates a separate maintenance by each; and it places it in the power of the electors of the township who reside outside of the village to determine by a majority vote whether the highway tax shall be assessed upon the money basis or not.

The distinction is significant as indicating a legislative intent as to what body of electors the authority is given in

the two cases to impose the tax. In the former, the authority is conferred upon the whole body of the electors of the township; in the latter, those who reside in the incorporated village are excluded. The same distinction is also maintained in relation to the property upon which the tax is to be levied. In the former it is to be levied and collected in the same manner as other township expenses; that is, upon all the taxable property of the township. In the latter, it is to be levied upon that portion of the township outside of the incorporated village.

The tax in question here was laid under chapter ii and therefore, regarding the provisions of the highway law alone, it should have been levied upon all of the taxable property of the township, unless other provisions of the statute, presently to be considered, repeal by implication those of chapter ii in those towns in which there are incorporated villages.

The law respecting incorporated villages provides that "the council shall have power to lay out, establish, open, make, widen, extend, straighten, alter, close, vacate, or abolish any highway, street, lane, alley, sidewalks, sewers, drain, water-course, bridge, or culvert in the village whenever they shall 'deem the same a public improvement, or necessary for the public convenience." (How. St. § 2858); also that "the expense of constructing and maintaining bridges, and the whole, or such part as the council shall determine, of the expense of improving and working, including grading and graveling upon the streets and highways, may be paid from the general highway fund, to be raised by tax upon all the property in the village." Id. § 2864.

Section 2924 provides that:

"The council shall also have power to raise, by general tax upon all the real and personal property aforesaid, [i. e. liable to taxation in the village] such sum not exceeding one-half of one per cent. of the assessed value of said property, as they shall deem necessary for highway and street purposes. Such moneys shall constitute a 'general highway fund,' and shall be expended exclusively for working and improving the highways, streets, lanes and alleys of the village."

One other section bearing upon the question is necessary to be considered in this connection, (§ 2853), and reads as follows:

"The council shall have supervision and control of all public highways, bridges, streets, avenues, alleys, sidewalks, and public grounds within the village, and shall have the like authority over the same as is given by the general laws of the State: *provided*, that the bridges within the limits of any village incorporated under this Act, in the highways leading into or through said village which have been or shall hereafter be laid out by the commissioners of highways of the township or townships in which said village may be located or established by any other lawful authority, except the authority of such village, shall be built, controlled and kept in repair by the township or townships in which they may be located, the same as if said village were not incorporated, and all the other bridges in said village shall be built, controlled and kept in repair by said village."

The evident design of this legislation was to give the corporate authorities of the village exclusive jurisdiction and control over the highways and bridges within its limits, with the single exception mentioned in the proviso, with full power to levy taxes for the purpose of carrying out the authority given.

Here the duty to keep the highways and streets in repair within the corporate limits is plainly enjoined; and it is equally clear that no tax can be imposed upon the township at large for this purpose. While this is so, chapter ii provides the method to keep the township highways in repair. The highway law remains unaltered in that respect.

It is claimed that the effect of the legislation placing the control of the streets in the incorporated villages in the village council, and giving them power to raise money by taxation to open and repair streets, not only operates to repeal that portion of the statute relating to the assessment for highway labor within the corporate limits, but excludes also from its operation the remaining portion relating to the money tax. And it is argued that since no part of the money tax can be expended for repairs within the corporate limits of the village, therefore no part of the

property lying within such corporate limits can be assessed to raise such money tax. But this by no means follows. The duty of keeping highways in repair, and the property which shall be taxed for that purpose, are not reciprocal and have no necessary connection with each other. It was perfectly competent for the Legislature to provide that all the taxable property in the township should be assessed for the repairs and improvements of highways in the township, although those highways should lie wholly outside of the village. Not the least expense in keeping up highways is the building, repairing and preservation of bridges.

There is no good reason why the property lying within the village limits should not bear its just proportion of this burden. The Legislature was careful to provide that the whole township should bear the expense of keeping the bridges on its highways in repair even when they are located within the corporate limits of the village.

If we should hold that the portion of chapter ii which authorizes the township meeting to vote a highway money tax, and to levy and collect it as other township expenses, is repealed by implication by the statute relating to incorporated villages above cited, it would follow that no authority exists for the imposition of the money tax, nor for levying and collecting the same. We cannot interpolate into this statute the language contained in chapter iv, so as to exclude the electors of incorporated villages from voting upon the question, and also so change the statute as to exclude the property in the village from being assessed for the money tax. To do so would require something more than construction; it would require legislation establishing a positive change in the design of the law.

No distinction is made between those residing within and those without the corporate limits of the village. Those within are regarded as citizens of the township, and as being mindful of its welfare, and the law has vested in all the electors indiscriminately the power of imposing this money tax. When the township board do it, they act as representing the township meeting, and are confined to the same subject of taxation as the township meeting.

When a tax is levied for any purpose, it must have express warrant of law to authorize its imposition. And when the mode is pointed out, and the manner it is to be levied and collected mentioned, that mode must be followed and the tax levied upon the property specified, or it will be illegal. The law points out definitely the mode and manner the highway money tax is to be authorized, levied and collected. The tax in question, although properly authorized, was levied and collected contrary to express provisions of the statute, and is therefore clearly illegal.

Judgment affirmed.

The other Justices concurred.