SECURITY TRUST CO. v. VILLAGE OF GROSSE POINTE et al.

District Court, E. D. Michigan, S. D.   May 13, 1929.

No. 2787.

William L. Carpenter, Thomas G. Long, and William G. Fitzpatrick, all of Detroit, Mich., for plaintiff.

Albert E. Meder, of Detroit, Mich. (Beaumont, Smith & Harris and Fred G. Cadwell, all of Detroit, Mich., of counsel), for defendants.

SIMONS, District Judge. This cause is before the court, after final hearing in open court on the pleadings and proofs, on a bill of complaint filed by Security Trust Company as receiver for Detroit United Railway against the village of Grosse Pointe, a Michigan municipal corporation, and Richard P. Connor, as president of such village, as defendants, to restrain such defendants from interfering with the operation of interurban electric cars by plaintiff in and through said village, and from removing the tracks, poles, and other equipment used by plaintiff in the operation of such cars. The defendants have filed an answer to such bill and a counterclaim, praying that the plaintiff be restrained from operating street cars over the route in said village involved in this suit, and be directed to remove the said equipment and property or to permit the defendants to do so at its cost.

All of the parties to the suit are citizens and residents of the state of Michigan, but the plaintiff was appointed as such receiver by this court in another cause, in which it had proper, original jurisdiction, and therefore it has jurisdiction to entertain the present suit as ancillary to its jurisdiction in the cause in which the plaintiff receiver was appointed.

The question involved is whether franchise rights under which the plaintiff has been operating electric cars through the defendant village have expired, as claimed by the defendants, or whether such rights are still possessed by the plaintiff, as asserted by it. On April 11, 1887, the territory now within the limits of the defendant village was a part of the township of Grosse Pointe, and subject to the jurisdiction and control of the officers of such township. On that date the township board of said township granted to Calvin K. Brandon and others, predecessors in title to the plaintiff in this case, the following franchise:

"Be it known that we, the undersigned township board of the township of Grosse Pointe, in the county of Wayne and state of Michigan, at a meeting of said board duly and lawfully convened this 11th day of April, A. D. 1887, by a resolution duly presented and adopted, and in consideration of one dollar to the said board in hand paid by Calvin K. Brandon, Hibbard Baker, and Hoyt Post, of Detroit, Michigan, have duly granted and conveyed to said Calvin K. Brandon, Hibbard Baker, and Hoyt Post, their successors or assigns, the exclusive right and privilege of constructing, maintaining and perpetually operating a railway to be operated by horse or electric power, for the transportation of passengers along Mack road, or Clinton road, in said township of Grosse Pointe, beginning at the boundary line between the townships of Hamtramck and Grosse Pointe, and running thence easterly along the line of said road to the easterly boundary line of the township of Grosse Pointe; also on Jefferson avenue, beginning at the boundary line between the townships of Hamtramck and Grosse Pointe, and running easterly to the easterly boundary of the said township of Grosse Pointe; also on the Cadieux road, beginning at Mack road, or Clinton road, and running southerly on said road to Jefferson avenue; also on the Morass road, beginning at Mack road, or Clinton road, and running southerly to Jefferson avenue, with the right and privilege of maintaining and perpetually operating the same with all necessary and convenient turnouts, switches, double single tracks and all appurtenances thereto belonging.

"The track of Mack road to be on either side of the roadway, and to be constructed not less than twelve (12) feet from the middle of the roadway.

"The building of said road to be commenced within one year from the date of this instrument and completed as far as the private road known as the Fisher road within three years from said date.

"In witness whereof, the undersigned, said township board of the township of Grosse Pointe, in the state and county aforesaid, have hereunto set their hands this 11th day of April, 1887."

The plaintiff contends, while the defendants deny, that the franchise just quoted is still in force and effect, and it is on such franchise that the plaintiff now chiefly, if not wholly, relies as the basis for its claimed right to operate its cars within the defendant village. This franchise will be hereinafter further considered and discussed.

It clearly appears from the record, and

this court hereby so finds, that the construction of the road just mentioned and contemplated by said franchise was not commenced within one year from the date of such franchise, and was not completed as thus required within the three years so prescribed. Nor is there any evidence or circumstance in the record indicating that the grantees under this franchise, or any of their successors or assigns, ever undertook any acts or took any steps in reliance on, or made any effort to comply with or make use of, such franchise until it was invoked by the plaintiff as a basis for its claims in the present suit.

In 1889 the present village of Grosse Pointe, defendant herein, was incorporated as a municipality separate and distinct from the township of Grosse Pointe, and thereby acquired, as hereinafter pointed out, control of the public highways within its territorial limits, including the railway route here involved. On March 13, 1891, the village board of defendant village granted to George Hendrie and others a franchise, for an indefinite period not specified therein, to construct and operate a railway along the route here involved, which then was, and still is, within the limits of said village. This franchise recited that whereas the grantees therein were "about to organize a railway company for the purpose of constructing or purchasing a railway in, along, and through Jefferson avenue, from the easterly limits of the city of Detroit to a point in the township of Grosse Pointe," therefore it was agreed by said village board that consent and authority was thereby given to said grantees and their assigns "to lay, construct, maintain, and operate" such a railway, with a single or double track, along said Jefferson avenue through said village from its westerly to its easterly limits; that the track of such railway should be "laid so as to obstruct as little as possible the free passage of vehicles and carriages along said highway, and shall be laid along one side of the said street in so far as the same is feasible"; and that the said grantees should "construct and have the said railway in operation within two years from the date" of said franchise.

On April 8, 1891, the township board of said township of Grosse Pointe granted to the same grantees to whom the village franchise just mentioned had been granted a franchise for the same route, period, and purposes, and on the same terms, recited in the same language, as those set forth in the franchise from said village already quoted. On November 1, 1892, the three franchises hereinbefore mentioned were assigned to the Detroit Suburban Railway, which subsequently assigned them to the Detroit United Railway, for which the plaintiff is acting as receiver, as already stated.

On April 17, 1893, an agreement was made between said village of Grosse Pointe and said Detroit Suburban Railway Company, providing that whereas said railway company had become the owner of the franchise granted by such village in 1891, hereinbefore mentioned, and whereas the period of two years prescribed by said franchise for the completion of the line of railway therein involved had elapsed, and said line had been completed and put in operation only partially, and the parties to said agreement desired "to make new arrangements to extend the time for the construction of the remainder of the line through the said village of Grosse Pointe," therefore it was agreed between said parties that said franchise of 1891 was repealed and canceled.

On the date of the making of the last-mentioned agreement, April 17, 1893, the defendant village granted to said Detroit Suburban Railway Company a franchise, the life of which was therein expressly limited to 30 years from said date, for the construction and operation of a single or double track railway along the route on Jefferson avenue in said village involved in this controversy. This franchise was supplemented by an ordinance, enacted by said village on August 19, 1895, which provided that said Detroit Suburban Railway Company and its assigns might construct an additional railway track on said Jefferson avenue through said village and might operate cars thereon, subject to the provisions of said ordinance, for a period of 30 years from April 17, 1893, the date of the franchise so supplemented. Said ordinance recited that it was supplementary also to the grant of 1891, which, as just noted, was repealed by the agreement of April 17, 1893, to which reference has already been made. All rights acquired by the Detroit Suburban Railway Company in all of the franchises thus granted and supplemented were assigned by it to the Detroit United Railway prior to the appointment of the plaintiff as receiver thereof. It does not appear that any other grants of authority or permission to operate cars through the defendant village were received by said Detroit United Railway, and plaintiff claims only the rights possessed by that company.

On March 4, 1925, the plaintiff was appointed receiver for said Detroit United Railway. On August 19, 1927, the board of trustees of the defendant village adopted a

resolution reciting that "the franchise for the operation of street cars or interurbans on Jefferson avenue in the village of Grosse Pointe has heretofore expired and has not been renewed," that it was "the desire of the village of Grosse Pointe to stop the operation of such street cars and interurbans and to require the removal of the tracks or trolleys, etc., on said Jefferson avenue," and that, therefore, "the Detroit United Railway and its receiver be given until the 15th day of October, 1927, to discontinue the operation on Jefferson avenue, in the village of Grosse Pointe, of the aforesaid street cars and interurbans and to discontinue the use of the said lines." The receiver was thereupon notified of such resolution. Thereafter the time for such discontinuance of operation was extended to May 1, 1928, and the time for such removal of property was extended to June 1, 1928. On April 30, 1928, the plaintiff informed the defendants that it "does not admit that its franchises through your village have expired, but on the contrary insists that they have not expired and are still in force," and on the same day advised the attorney for said village of its intention to assert "whatever rights the company may have under the franchise of April 11, 1887, granted by the township board, * * * and also under the franchise of April 8, 1891, granted by the township board, * * * both of which franchises have been assigned to the Detroit United Railway."

Shortly thereafter this bill was filed by the plaintiff to restrain the defendants from interfering with the claimed right of the plaintiff to continue the operation of its cars and the maintenance of its equipment in said village as aforesaid. It will be noted that the village franchise of 1891 was terminated by the agreement of 1893, already mentioned, and that the village franchise of 1893, as supplemented in 1895, has expired according to its terms, as also already indicated. Indeed, no claim is made to the contrary. Whatever rights, therefore, plaintiff has in the premises, must be based upon one of the township franchises in question.

Considering first the township franchise of April 8, 1891, it is clear that, as this franchise was granted by the township after the present defendant village, by its incorporation as a municipality in 1889, had acquired control, independent of said township, over the public highways, including the route here involved, within the territory of such village, such franchise conferred no rights upon the grantees therein or their successors in title,

as against the defendants herein. Section 2853 of Howell's Annotated Statutes of Michigan of 1882, later re-enacted as section 2646 of the Michigan Compiled Laws of 1915, provides that the council of such a village "shall have supervision and control of all public highways, bridges, streets, avenues, alleys, sidewalks and public grounds within the village." As pointed out by the Michigan Supreme Court as early as the year 1884, in the case of Ryerson v. Laketon, 52 Mich. 509, at page 515, 18 N. W. 241, 244, "the evident design of this legislation was to give the corporate authorities of the village exclusive jurisdiction and control over the highways * * * within its limits." Nor does this appear to be seriously disputed by the plaintiff, which, although referring to this 1891 franchise in its bill and brief, neither in such brief nor in oral argument has attempted to sustain the validity of such franchise against the attacks made thereon by the defendants.

There remains for consideration the franchise granted by the township board of Grosse Pointe to Messrs. Brandon, Baker, and Post, their successors or assigns, the predecessors in title to the plaintiff, on April 11, 1887, at a time when the route covered thereby and involved herein was not located within the territory of the present village of Grosse Pointe, but was within the limits of said township and subject to the jurisdiction and control of the township board of such township. It is urged by the defendants, on various grounds which will now be considered, both that this franchise was invalid in its inception and that, even if not so invalid, any rights originally existing thereunder have been lost and are not now available to the plaintiff.

The contention of the defendants that this franchise is void, because a township has no authority to grant a perpetual franchise to a street car company, the maximum life of which is by law limited to 30 years, is, even if applicable to this grant originally made to individuals, clearly without merit, and was decided adversely to such a contention by the United States Supreme Court in the case of Detroit v. Detroit Citizens' Street Railway Co., 184 U. S. 368, 22 S. Ct. 410, 46 L. Ed. 592, in which the court, speaking of a similar argument there advanced by a street car company, said (on page 394 [22 S. Ct. 420]):

"Although the company itself, by the act under which it was incorporated, was limited in its corporate life to a term of 30 years

from the date of its organization in 1862, the extension of the term of consent by the city carried such consent about 16 years beyond its then corporate life. Of course, no one contends that this extension of the term for the use of the streets of the city in any manner affected the limit of the term of the corporate life of the company, but the limitation of its life did not prevent it from taking franchises or other property, the title to which would not expire with the corporation itself. A corporation whose corporate existence was limited to a term of years could always purchase the fee in property which it needed for the operation of its business. If at the end of its term its life were not extended, the property which it owned was an asset payable to the shareholders after the payment of its debts, and in a case like the present, where the consent was assignable and transferable, * * * any company itself having corporate existence for that purpose, could purchase the outstanding term and operate its road thereunder. We see no reason why the company could not take the extended term as provided for in the ordinance, and it formed a good consideration for the agreement on the part of the company to perform the other obligations contained in the ordinance."

The same conclusion was reached and expressed by the Circuit Court of Appeals for the Sixth Circuit in Detroit Citizens' Street Railway Co. v. Detroit, 64 F. 628, 26 L. R. A. 667.

The claim of the defendants that this franchise is invalid, because not granted to a corporation, but to individuals, is, in my opinion, equally untenable. No reason is suggested, and none appears to the court, either on principle or on authority, why such permission to use the public highways may not be lawfully granted to private individuals as well as to a corporation. The only decision cited by defendants in this connection is that of the court in Detroit Citizens' Street Railway Co. v. Detroit, supra, where the court remarks in passing, in language which was wholly dictum, that one of the elements necessary "to the practical operation of a street railway" in Michigan is corporate capacity, "because under the law of that state there seems to have been no provision by which natural persons could directly acquire the other requisite franchises." An examination of this opinion, however, makes it clear that by these words, "other requisite franchises," the court intended to refer only to the corporate powers and privileges grant-

ed by the Legislature to street railway corporations in and by their incorporation as such, and was not referring to the consent which may be granted by a municipality for the use of its streets in the construction and operation of a street railway system, which consent is, of course, commonly called, in this connection, a franchise, and that word, as hereinbefore and hereinafter used, is to be understood in that sense.

It will, however, be noted, from the language of this township franchise already quoted, that after commencing with a grant of "the exclusive right and privilege of constructing, maintaining, and perpetually operating a railway" along a line of specified road therein described, it then provided that a certain track was to be constructed not less than a specified distance from the center of the roadway and then concluded with the following paragraph:

"The building of said road to be commenced within one year from the date of this instrument and completed as far as the private road known as the Fisher road within three years from said date."

One of the settled rules of construction, adopted by courts in cases involving public grants of this nature by the authorities of municipalities, is that the language of such grants is to be strictly construed against the grantees therein. Cleveland Electric Railway Co. v. Cleveland, 204 U. S. 116, 27 S. Ct. 202, 51 L. Ed. 399.

Regardless, however, of the rule just mentioned, it is, in my opinion, manifest, from an examination of this franchise, that the language just quoted therefrom was intended, and therefore must be held, to be a condition precedent, on the performance of which, according to its terms, depended the right of the grantees and their assigns to enjoy the use of the public highway thus conditionally granted. Township of Hamtramck v. Rapid Railway Co., 122 Mich. 472, 81 N. W. 337. As already indicated, I am satisfied by the record, and find, that the building of this road was not commenced nor completed within the periods thus prescribed for such commencement and completion, respectively. It follows necessarily that the condition thus agreed on between the parties to this franchise was not performed and complied with as required by its express terms.

Whether such condition should be regarded as precedent or subsequent is immaterial, so far as the purposes of this case are concerned, as, even if it should be treated as a condition subsequent, and therefore requiring

the affirmative action of the township in order to take advantage of a breach of such condition, such action is found in the act of such township in granting, on April 8, 1891, to other persons, permission to construct and operate a double track railway along the same route over which it had previously granted the exclusive rights of construction and operation conferred by the franchise containing said condition. Revocation may, of course, be implied as well as express, and if it should be thought necessary that said township should have expressed its intention to revoke this franchise for failure of the grantees to observe this condition thereof, such an intention to exercise its right to terminate said franchise was plainly evinced by its granting of this later franchise. The circumstance, already mentioned, that such subsequent franchise proved to be of no advantage to the grantees therein for the reasons hereinbefore set forth cannot alter the effect thereof as indicative of said intention on the part of the township to exercise its right to terminate the earlier franchise in question.

It is earnestly insisted by the defendants that the acts of the plaintiff's predecessors in seeking, obtaining, and using the franchises granted by the defendant village, after the time at which the plaintiff now claims that such predecessors already possessed a franchise granted by the township conveying the same rights, shows an abandonment, waiver, or nonuser of the rights so claimed to have been received from the township. There is considerable force in this argument. That such rights may be so lost cannot be doubted. New York Electric Lines Co. v. Empire City Subway Co., 235 U. S. 179, 35 S. Ct. 72, 59 L. Ed. 184. Moreover, the acquisition of these later grants from the village appears to indicate, under the circumstances disclosed by the record, an understanding and admission on the part of such grantees to the effect that their rights under the original township franchise had been terminated by the failure to perform its conditions. In view, however, of the opinion of this court, already expressed, that the plaintiff has no right to continue to operate railway cars over the route here involved, it is unnecessary to determine whether, or to what extent, the contention of the defendants on this branch of the case is correct.

For the reasons stated, the bill of complaint must be dismissed, and a decree entered in accordance with the prayers of the counterclaim, therein designated as a crossbill, of the defendants.